378 A.2d 824

**COMMONWEALTH of Pennsylvania**

v.

**Terry KRAMER, Appellant.**

**No. 56.**

Supreme Court of Pennsylvania.

Argued Nov. 19, 1976.

Decided Oct. 7, 1977.

Roger B. Reynolds, Jr., Norristown, for appellant.

William T. Nicholas, Dist. Atty., Stewart J. Greenleaf, Eric J. Cox, Asst. Dist. Attys., for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

Appellant, Terry D. Kramer, was tried by a judge and jury and convicted of voluntary manslaughter. Post-verdict motions were denied, and appellant was sentenced to a term of imprisonment of five to ten years. This appeal followed.

The facts are as follows. On October 11, 1967, Linda Carol Kramer, appellant's ten-month-old daughter, was pronounced dead at the Pottstown Memorial Hospital. The Montgomery County Coroner ordered R. A. Schofield, M. D., to perform an autopsy and the Montgomery County Detective's Office immediately began an investigation of the child's death. Dr. Schofield performed the autopsy and determined that the cause of death was peritonitis caused by a perforation of the large bowel. There were a few bruises on the victim's abdomen, which the victim's mother told officers were caused when a five-year-old sister tripped and fell on the infant. Following their investigation, neither the coroner's office nor the county detective's office found any evidence of criminal actions and no criminal charges were brought at that time.

In August of 1974, appellant's wife, Mary Ann, told police that on the date of the victim's death, she saw appellant strike the infant twice in her stomach. Mrs. Kramer also told police that appellant warned her not to go to the police. As a result of Mrs. Kramer's statement, appellant was indicted for murder and voluntary manslaughter seven years after the death of his daughter.

At trial, Mrs. Kramer testified that she saw the appellant strike the victim twice in the stomach. Dr. Schofield testified that peritonitis was the cause of death, but the cause of the peritonitis was not anatomically apparent. The Commonwealth then called Dr. Halbert Fillinger, an expert in forensic pathology, who was asked a hypothetical question concerning the cause of death based on the testimony of Mrs. Kramer and facts contained in the autopsy report. He testified that in his opinion peritonitis was the cause of death and that the peritonitis was caused by the blows being delivered to the infant's abdomen as described in Mrs. Kramer's testimony.

Appellant first alleges that the Commonwealth failed to show any causal connection between his alleged blow to the victim's abdomen and the victim's death. Appellant thus

claims that the evidence is insufficient to sustain his conviction for voluntary manslaughter. We do not agree.

When reviewing the sufficiency of the evidence, the test is:

" . . . [W]hether, viewing the evidence in the light most favorable to the Commonwealth and drawing all proper inferences favorable to the Commonwealth, the trier of fact could reasonably have found that all of the elements of the crime had been established beyond a reasonable doubt. . . ." *Commonwealth v. Robson,* 461 Pa. 615, 625, 337 A.2d 573, 578 (1975).

Here, Mrs. Kramer stated that she saw appellant strike the infant in the abdomen. Dr. Schofield stated that the cause of death was peritonitis and Dr. Fillinger testified that the peritonitis was caused by a blow to the abdomen. Viewing this evidence in the light most favorable to the Commonwealth, we believe a causal connection between appellant's alleged blows to the infant's abdomen and the infant's death has been established.

Furthermore, as we stated in *Commonwealth v. Boyd,* 463 Pa. 343, 350, 344 A.2d 864, 867 (1975):

"It is settled law in this Commonwealth that a verdict of voluntary manslaughter will be sustained absent evidence of passion or legal provocation provided that the testimony would support a finding of murder."

As we believe the record could support a conviction of murder, we find appellant's claim concerning the sufficiency of the evidence to be without merit.

Appellant next claims that the court below erred in refusing to quash the voluntary manslaughter indictment. At the time of the offense, no statute of limitations existed for voluntary manslaughter. The New Crimes Code,[1] which went into effect on June 6, 1973, however, contains a two-year statute of limitations for voluntary manslaughter. 18 Pa.C.S.A. § 108. Appellant was arrested on August 20, 1974.

1. Act of December 6, 1972, P.L. 1482, No. 334, § 1, et seq., 18 Pa.C.S.A. § 101, et seq.

Appellant argues that subjecting him to the old statute of limitations denies him equal protection of the law as guaranteed by both the Pennsylvania and federal constitutions.

In *Baltimore & O. R. Co. v. Cmwlth., D. of L. & I.,* 461 Pa. 68, 334 A.2d 636 (1975), we held that the protection afforded by the equal protection clause of the federal constitution and the prohibition against special laws in the Pennsylvania Constitution are substantially the same. The concept of equal protection requires that uniform treatment be given to similarly situated parties. *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), rehearing denied 379 U.S. 870, 85 S.Ct. 12, 13 L.Ed.2d 76 (1964). Here, we can find no violation of equal protection, as all individuals committing the act of voluntary manslaughter before June 6, 1973, were subjected to no statute of limitations, while all individuals committing the same act after that date must be charged within two years.

Appellant next alleges that the trial court erred in refusing certain requested points for charge. We agree with appellant and grant him a new trial.

During his charge, the trial court instructed the jury on credibility as follows:

"Now, obviously, in determining the facts of the case, you will inevitably have to pass upon the credibility or the believability of the witnesses. How reliable are they in what they say to you and in giving you an exact picture and representation of what occurred and what was said and what was done? This is exclusively your function.

"It is exclusively for you to say how much credibility, reliability, truth, value and weight you will place upon the testimony of the various witnesses that you heard.

"In judging the credibility of witnesses, you will, of course, have the right to consider the possibility or probability of the truth of that which the witness has said. You have the right to recall the manner and demeanor of the witness on the witness stand. You have the right to consider the knowledge and education, the opportunity for observation and the experience of each witness, and to

consider the honesty and frankness, the straightforwardness of each witness, or the lack of those qualities.

"You have the right to consider whether or not the witnesses exhibited any bias or prejudice and whether his or her interests, if any, in the outcome of these proceedings have any bearing on his or her truthfulness.

"All these matters may be considered by you jurors as men and women of the world in judging just how much credibility, reliability, truth, value and weight you will place upon the testimony of the witnesses in order to determine the truth in the case.

"And basically, members of the jury, constantly through your lives, all our lives, we are meeting people and having to make evaluations as to whether these people are telling us the truth, or whether they are exaggerating. You use the same criteria in the Courtroom as you use in your everyday life in evaluating people to determine the believability and credibility you will attach to the statements made by various witnesses in this case.

"You are not compelled to believe the entirety of the statements or testimony of any witness. If you believe any part thereof, you may accept it totally, believe part of it, or reject it completely.

"Now, you will note I stated you can take into consideration in passing upon the credibility of a witness his or her interests, if any, in the outcome of the case. It does not follow as a necessary conclusion that an interested witness will tell an untruth while under oath on the witness stand. But his or her interest is a factor to be considered along with all the other evidence and circumstances in the case."

The court refused the following requested instructions:

"27. A witness may be impeached and discredited by contradictory evidence, or by evidence that at other times he or she has made statements which are inconsistent with his or her present testimony. If you believe any witness has been impeached, it is your exclusive province to give his or her testimony such credibility, if any, as you may think it deserves.

"28. In considering the testimony of any witness, if you find that such witness has deliberately and intentionally sworn falsely to a material fact you have a right to disregard his or her entire testimony.

"29. If you find that any witness has made a material misstatement of the facts, you may disregard that part of his or her testimony which you find to be false and you may accept that part which you believe, or you may disregard all of his or her testimony if you believe he or she has willfully given false testimony and is a person unworthy of belief.

"30. In determining the credibility of the witness for the Commonwealth, Mary Ann Kramer, you should consider that it has been established that she has given testimony, under oath, on two prior occasions which differs materially from that to which she testified to in this case; and, that on two other separate occasions she made statements substantially different from her testimony during this trial."

The court below refused these points, stating that he believed they had been adequately covered in the charge and that he did not want to single out Mrs. Kramer, the only witness who had made conflicting statements.

In *Commonwealth v. Fell*, 453 Pa. 531, 309 A.2d 417 (1973), we held that a jury charge is to be evaluated by reading the charge in its entirety. Reading the charge in this manner, we can find nothing on the impeachment of witnesses and its effect on credibility as set forth in Point for Charge # 27. Further, we find the trial court's unwillingness to single out Mrs. Kramer, as requested in Point for Charge # 31, unpersuasive on this point.

Mrs. Kramer was the only eyewitness to the alleged incident and she failed to come forward for seven years following her daughter's death. Further, our review of the record shows at least four inconsistencies between her preliminary hearing testimony and that offered at trial.

Since appellant specifically requested such points for charge under Pa.R.Crim.P. 1119, we believe the court erred in refusing these points.

Appellant also requested the following:

"34. You are instructed that the testimony of Dr. Fillinger, which consisted merely of a reply to a hypothetical question, is considered by law the lowest grade of evidence admissible at trial."

In *Commonwealth v. Thomas,* 448 Pa. 42, 292 A.2d 352 (1972), we held that a litigant is entitled to a "low grade" charge on expert testimony where the expert's opinion is either in response to a hypothetical question or in contradiction to direct evidence. Here, Dr. Fillinger's opinion was in response to a hypothetical question. Further, he testified that the peritonitis was caused by a hard blow to the stomach, while the doctor who performed the autopsy seven years earlier testified that the cause was not anatomically apparent. Again, we believe the court erred in refusing the requested point for charge.

Judgment of sentence reversed and case remanded for a new trial.

JONES, former C. J., took no part in the consideration or decision of this case.