425 A.2d 1119

Ruby JOHNSON, Henry and Lillian Jenkins, Rosalie Reynolds, a/k/a Rosalie Bethea, Andrew Dennis and Insurance Adjustment Bureau

v.

PILGRIM MUTUAL INSURANCE COMPANY, Appellant.

Ruby JOHNSON and Henry and Lillian Jenkins and Rosalie Reynolds, a/k/a Rosalie Bethea and Andrew Dennis and Insurance Adjustment Bureau, Appellant,

v.

PILGRIM MUTUAL INSURANCE COMPANY.

Superior Court of Pennsylvania.

Argued March 19, 1980.

Filed Feb. 6, 1981.

David N. Rosen, Philadelphia, for Pilgrim Mutual.

Alan Kear, Philadelphia, for Johnson, et al.

Before HESTER, WICKERSHAM and LIPEZ, JJ.

HESTER, Judge:

This most unusual and complex case comes before the court on the cross appeals of appellant Pilgrim Mutual Insurance Company, hereinafter sometimes "Pilgrim", and Insurance Adjustment Bureau, hereinafter sometimes "I.A. B.", from the order of the lower court dated February 27, 1979 dismissing the respective exceptions [1] taken from the Adjudication of the Chancellor dated November 6, 1978.

We affirm in part and reverse in part.

The facts in the instant case may be briefly summarized as follows: The individual appellees had submitted claims for fire losses to Pilgrim pursuant to individual policies of fire insurance issued to them by Pilgrim. Appellee Ruby

1. The only portion of appellant Pilgrim's exceptions which were sustained was that portion of the Chancellor's Order of June 13, 1978 incorporated into its Adjudication of November 6, 1978 which read: "If this litigation should become protractive, the court reserves the right at a later date to order the (appellant) to pay an additional sum to (appellee) Insurance Adjustment Bureau as attorney's fees." That proviso was vacated.

Johnson owned a home at 2208 North Colorado Street in Philadelphia which was burned on September 28, 1977. Appellees Henry Jenkins and Lillian Jenkins owned property at 4638 Hedge Street, Philadelphia, which was damaged by fire on January 12, 1978. Appellee Rosalie Reynolds, a/k/a Rosalie Bethea, was the owner of property at 2322 Madison Square, Philadelphia, which was damaged by fire on February 13, 1978. Appellee Andrew Dennis lived in appellee Reynolds' property and owned personalty which was destroyed in the February 13, 1978 fire. The other appellee, I.A.B. (also a cross-appellant), was the fire adjusting company which had been previously retained by all individual appellees to adjust their respective fire claim losses.

Appellees' Complaint in Equity was brought against appellant Pilgrim and consisted of three counts alleging, *inter alia*, that Pilgrim had failed to negotiate in good faith and had refused to pay the individual appellees legitimate claims because of the contractual relationship and involvement between the individual appellees and I.A.B. and further, that Pilgrim has intentionally interfered with the contractual relationships between I.A.B. and the individual appellees by sending letters directly to the individual appellees stating that the delays in settling claims was due to the individual adjusting company handling their claims and thus urging them to terminate their contractual relationships with I.A.B. and deal directly with Pilgrim.

Said Complaint in Equity sought injunctive relief against Pilgrim as well as compensatory and punitive damages for all appellees. The equitable relief sought included: (a) enjoining Pilgrim from intentionally interfering with the contractual relationships between the parties; (b) enjoining Pilgrim from communicating in any manner whatsoever directly with the individual appellees; and (c) enjoining the appellant from otherwise engaging in unfair business practices such as posting notices on its issued fire insurance policies warning its policyholders from retaining the services of a private adjusting company and sending written letters to pending claimants advising those claimants that delays in

adjusting were caused by the claimants individually retaining fire adjusting companies.

In addition, all of the individual appellees as well as I.A.B., sought compensatory and punitive damages from Pilgrim.

The case was originally assigned to the Chancellor on May 1, 1978; the appellees at all times having sought a prompt final adjudication on the merits of its Complaint in Equity. Appellant filed preliminary objections which were denied on May 10, 1978. Final hearing was held on May 30, 1978 through June 2, 1978. An order of Court was entered on June 13, 1978 and the Chancellor's adjudication incorporating said Order was filed on November 6, 1978.

The Chancellor's Adjudication dated November 6, 1978 incorporated the Chancellor's earlier issued Order dated June 17, 1978, and contained the following:

1. Pilgrim was permanently enjoined from

(a) attaching to any of its fire insurance policies the "pink form" [2] or any other form cautioning or advising policyholders against employment of a public adjuster or other "outside parties" to represent them in enforcement of their rights under the policy.

(b) sending to any fire insurance policyholders the letter introduced into evidence [3] or sending any other letters, or

2. Pilgrim Mutual Insurance Company. CAUTION: DO NOT SIGN ANY PAPERS OR BE MISLED by any outside parties asking you to sign any papers regarding or in reference to any FIRE OR EXTENDED COVERAGE CLAIM due you on this policy.

Any benefit or value payable under this policy can be obtained without help or alleged influence of outside parties through the Home Office of the Company. There is no need to pay anyone a fee for alleged services in collecting any sum which is rightfully due you. The Company wishes to pay every claim without delay and any representative of the Company will be glad to render assistance without cost to you.

For your own protection, deal only with one of the following Company representatives.

3. Dear Customer: We are experiencing a delay in adjusting a settlement on your fire claim at this time. Delay is due to an independent adjustor handling your claim.

making any oral communications discouraging said policy-holders from engaging public adjusters or condemning public adjusters in any way, or encouraging said policy-holders to discharge and public adjuster already hired, or to make any settlement without the participation of any public adjuster already hired,

(c) interfering in any way with the relationship between appellee I.A.B. and any of its clients.

2. I.A.B. was awarded punitive damages in the sum of $7,500.00.

3. Individual appellee Ruby Johnson was awarded compensatory damages in the amount of $19,600.00 and punitive damages in the amount of $4,000.00.

4. Individual appellees Henry Jenkins and Lillian Jenkins were awarded compensatory damages in the amount of $14,117.94 and punitive damages in the amount of $2,500.00.

5. Rosalie Reynolds, a/k/a Rosalie Bethea was awarded compensatory damages in the amount of $15,500.00 and punitive damages in the amount of $3,500.00.

Regulations state that you have 72 hours (three actual working days—not counting Sundays and Holidays) within which to cancel an agreement between you and an independent adjustor.

When an agreement has been signed with an independent adjustor, he will charge up to 15% of the claim, which is taken out of the settlement by the adjustor and is not paid by Pilgrim Mutual Insurance Co.

You can settle your claim directly with the Home Office of Pilgrim Mutual Insurance Co. directly if you have had the following:

1. You have not signed an agreement with an independent adjustor.

2. You have signed an agreement with an independent adjustor but either did not understand the 72 hour section or did not receive a copy of your agreement.

Long delays in settling fire claims usually result in the claim being settled in the courts at large costs to the person filing the fire claim. We would like to know if you have signed any agreement papers with the independent adjustor. Please reply with the enclosed card as soon as possible.

Respectfully,
Harry Iezzi
Vice President

6. Individual appellee Andrew Dennis was awarded compensatory damages in the amount of $2,500.00 and punitive damages in the amount of $500.00.

7. Pilgrim's counterclaim was dismissed.

8. I.A.B. was ordered to recover from the individual appellees as contracted compensation, 10% of the compensatory damages above set forth. It was further ordered that counsel for I.A.B. recover his fee from I.A.B. and not from the individual appellees.

Pilgrim filed thirty (30) Exceptions to the Chancellor's Adjudication (which incorporated the June 13, 1978 Order) and appellees filed eleven (11).

Of the thirty (30) Exceptions filed by Pilgrim, those preserved for this appeal may be stated as follows:

(1) Did the Chancellor err in permanently enjoining appellant Pilgrim from cautioning or advising its policyholders against employment of a public adjustor through the use of a printed message attached to fire policies it issued.

(2) Did the Chancellor err in permanently enjoining appellant Pilgrim from sending letters to its policyholders who had fire claims advising them that problems had developed between appellant and a fire adjustor employed by claimants that was adversely affecting adjustment.

(3) Did the Chancellor err in permanently enjoining appellant Pilgrim from communication with fire claimants insured by appellant whenever appellee fire adjustor was retained to advise and assist?

(4) Did the Chancellor err in awarding punitive damages to appellee I.A.B.?

Appellees eleven (11) Exceptions were argued, briefed and subsequently disposed of by the Order of the court dated February 27, 1979.

The only issue preserved on I.A.B.'s cross appeal is its contention that the Chancellor erred in failing to award it compensatory damages for defamation.

Since the Order of the Chancellor was entered and subsequent to the filing of appeals, the individual appellees causes of action were settled (Nos. 3, 4, 5, and 6 set forth on pages 5 and 6 of this Opinion).

We affirm in part and reverse in part.

However noble its intended purpose, we believe that those portions of the lower court's order which permanently enjoined Pilgrim from (a) attaching the "pink form" (more fully set forth at page 1121 of this opinion) to its fire insurance policies and (b) sending the letter or a similar prototype or orally communicating and discouraging its policyholders from engaging or employing public, fire insurance adjusters to help settle their claims (more fully set forth at page 1122 of this opinion) were improperly issued as that type of restraint is clearly prohibited by the Pennsylvania Constitution, Art. 1, Sec. 7, by *Goldman Threatres v. Dana*, 405 Pa. 83, 173 A.2d 59, cert. denied, 368 U.S. 897, 82 S.Ct. 174, 7 L.Ed.2d 93 (1961), and by *Willing v. Mazzocone*, 488 Pa. 377, 393 A.2d 1155 (1978).

As our Supreme Court stated in *Goldman* (supra at 173 A.2d 61):

Apart from the Fourteenth Amendment, the guarantee of free communication of thought and opinion is independently protected by our State Constitution of 1874. Article 1, Section 7, P.S., thereof recognizes and declares that "The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty." This provision is a direct inhibition on previous restraint of an exercise of the protected rights. . .

▆▆▆ Full well appreciating the distinction between the degree of constitutional protection afforded non-commercial speech versus speech proposing a commercial transaction, (non-commercial speech is afforded a greater measure of constitutional protection while commercial speech is afford-

ed a limited measure) [4] we must ask ourselves the threshold question whether the above two stated prohibitions violated Pilgrim's constitutionally protected, albeit limited, right of free commercial communication, thought and speech? We conclude that it has. The lower court's rationale in issuing the above two injunctions is artfully stated in its adjudication:

> We have not attempted to recite all the evidence in this case, the record of which is 613 pages. We believe, however, the record portrays a sordid and shabby picture. People whose homes have been burned are always in a very unfortunate position. Poor people, who have no resources to make repairs and other living arrangements, are especially unfortunate. In dealing with companies they have paid to insure their properties against fire, they are in a very poor bargaining position. They are often forced, by the emergency of the circumstances, to accept whatever money is offered by the insurer, rather than insist upon a fair figure. This is especially so, since such insureds are not likely to know just what they are entitled to. They can greatly benefit from the services of an adjustment company, which has the knowledge and personnel to determine what they are entitled to. The (appellant), in our view, sought to penalize all the private (appellees) herein for having hired the adjustment company. It did so, not only passively by not settling the claims, but actively by discouraging the parties from using an adjustment company, and by refusing, on some occasions, to accept the adjustment company as the legitimate representative of the individual (appellees). It clearly interfered with the business relationship between the adjustment company and its clients.

4. As our Supreme Court in *Adler, Barish, Daniels, Levin and Creskoff v. Epstein*, 482 Pa. 416, 423, 393 A.2d 1175 at 1179 (1978), reiterated:

> [2, 3] "[S]peech which does 'no more than propose a commercial transaction'" is no longer outside the protection of the first and fourteenth amendments to the Constitution of the United States. *Virginia Pharmacy Board v. Virginia Consumer Council*, 425 U.S. 748, 762, 96 S.Ct. 1817, 1825, 48 L.Ed.2d 346 (1976).

Thus the lower court appears to have rationalized that the individual appellees' rights in the instant case to engage the services of a private adjusting company (here all four individual appellees had hired I.A.B.) were so violated and so negatively affected by Pilgrim's "pink card" and letter as to justify enjoining *permanently* Pilgrim's commercially limited right of freedom of speech and communication with its policyholders.

We disagree.

The Pennsylvania Supreme Court in *Willing* (supra), in dissolving a permanent injunction as an invalid prior restraint on speech which enjoined a former client from demonstrating by carrying a "sandwich-board" sign denouncing her prior lawyers, despite the fact that the Chancellor concluded that the woman was motivated "either by reason of eccentricity or an even more serious, mental instability", 393 A.2d concluded at page 1159:

The injunction in this case is a classic example of a prior restraint on speech. Protection of the citizenry from prior restraints is one of the leading principles on which the first amendment is based. *Lovell v. Griffin*, 303 U.S. 444, 451–52, 58 S.Ct. 666 [668–69], 82 L.Ed. 949 (1938). See *Near v. Minnesota*, 283 U.S. 697, 713, 51 S.Ct. 625 [630], 75 L.Ed. 1357 (1931). Thus, there is a heavy presumption against the constitutional validity of any prior restraint on speech. *New York Times Company v. United States*, 403 U.S. 781, 714, 91 S.Ct. 2140, 2141, 29 L.Ed.2d 822 (1971); *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419, 91 S.Ct. 1575, 1578, 29 L.Ed.2d 1 (1971); *Carroll v. President and Commissioners of Princess Anne*, 393 U.S. 175, 181, 89 S.Ct. 347, 351, 21 L.Ed.2d 325 (1968).

Thus under the First Amendment to the United States Constitution, Art. I, Section 7 of our State Constitution, and the Supreme Court cases involving prior restraint, no basis exists for permitting the first two prongs of the permanent injunction in this case to stand.

■ Turning now to the third element of the permanent injunction, we feel that the record amply supports the Chancellor's finding that Pilgrim intentionally interfered with I.A.B.'s existing contractual rights, thus by implication, Pilgrim abused its constitutionally limited protected right of free speech in a commercial setting. According we affirm the order of the lower court with the following modification: "Pilgrim is permanently enjoined from intentionally interfering with the known contractual relationships between I.A.B. and any of its existing or future clients."

■ Finally we affirm those portions of the order of the lower court where I.A.B. was awarded punitive damages although not *specifically* awarded compensatory damages for defamation.

The record supports the Chancellor's finding that Pilgrim acted with both bad motive and indifference. The indifference, stated the Chancellor, was "studied" which in its view was worse than "reckless"; Pilgrim's motive being to prevent I.A.B. from representing the individual appellees by refusing to negotiate in good faith with I.A.B. and by disparaging I.A.B., all with the ulterior motive of settling the claims of the individual appellee insureds for less than a knowledgeable adjuster was likely to insist upon.

In *Focht v. Rabada*, 217 Pa.Super. 35 at 38, 268 A.2d 157 (1970), we detailed when punitive damages may be awarded:

"Pennsylvania has adopted the rule of punitive damages as set forth in § 908 of the Restatement of Torts and the comments thereunder. Section 908(1) provides: 'Punitive damages' are damages other than compensatory or nominal damages awarded against a person to punish him for his outrageous conduct'. Comment (b) to the above section states that 'Punitive damages are awarded only for outrageous conduct, that is, for acts done with a bad motive or with a reckless indifference to the interests of others.' See *Chambers v. Montgomery*, 411 Pa. 339, 344,

192 A.2d 355 (1963). Thus, the Pennsylvania rule allows the awarding of punitive damages when the act is done with reckless indifference as well as with bad motive."

The other edge of Pilgrim's sword, that of attempting to deprive I.A.B. from the opportunity of earning certain fees or commissions, even if not Pilgrim's primary motive, in and of itself, justified the awarding of punitive damages. *Richette v. Solomon*, 410 Pa. 6, 187 A.2d 910 (1963).

■ We need not address ourselves to the legal issue of whether punitive damages may be awarded without an accompanying award of actual or compensatory damages. A careful reading of the first sentence next to the last paragraph of the lower court's June 13, 1978 Order, reveals that the Chancellor found and awarded compensatory damages to I.A.B. in the form of lost fees, as contracted compensation, ten percent (10%) of the compensatory damages awarded the individual appellees as more fully set forth on page 1122 of this Opinion.

Thus it is clear that compensatory as well as punitive damages were awarded and any purely legal argument that punitive damages may not be awarded absent compensatory damages, is belied by the record.

Order affirmed in part and reversed in part consistent with the foregoing opinion.

LIPEZ, J., files a concurring and dissenting opinion.

LIPEZ, Judge, concurring and dissenting:

I agree that the lower court's broad injunction permanently enjoining Pilgrim's communication with its policyholders constitutes a prior restraint on speech in violation of the First and Fourteenth Amendments to the U.S. Constitution and Article I Section 7 of our state constitution.[1] I further

---

1. *See Adler et al. v. Epstein et al.*, 482 Pa. 416, 393 A.2d 1175 (1978).

agree that the record supports the chancellor's finding that Pilgrim intentionally interfered with I.A.B. existing contractual agreement with the other appellees, contrary to § 766, Restatement (Second) of Torts and hence injunctive relief for such interference was appropriate. However, I believe that the majority's modified injunction is too broad and should be limited to enjoin only Pilgrim's interfering in the relationship between I.A.B. and the parties involved in this action only and not as to future clients.

I think also that the majority is in error in sustaining the award of punitive damages to I.A.B. My reading of this record fails to disclose any award of compensatory damages to I.A.B.,[2] hence punitive damages cannot be awarded. *See Hilbert v. Roth*, 395 Pa. 270, 149 A.2d 648 (1956) (no award for punitive damages may be made where actual damage has not been suffered) *Weider v. Hoffman*, 238 F.Supp. 437 (1965) (it is the award of actual damages, and not its showing, which determines whether a verdict for punitive damages will stand). See also 75 Dick.L.Rev. 585.

**2.** The June 13, 1978 Order of the Chancellor states in paragraph two:
"The plaintiff insurance adjustment bureau is awarded punitive damages in the sum of $7500."
No reference whatsoever is made to compensatory damages. In all other awards of punitive damages in this order, there were awards under the policy for compensatory damages as well as punitive damages.
The only reference on the award to I.A.B. in the next to last paragraph referred to by the majority is the statement, "it is directed that plaintiff Insurance Adjustment Bureau recover from the *plaintiff* as contracted compensation, 10% of the sums designated as payable under the insurance policies and as consequential damages only." This can hardly be construed as an award against the defendant (Pilgrim). Indeed the chancellor specifically refrained from making any award for actual damage as appears in his adjudication of 2/27/79 on the *Exceptions wherein he states:*
"We are aware that the law ordinarily requires there be actual damages in order for there to be punitive damages, although this contention does not appear in defendants brief. While finding the fact of actual damages we are not inclined to speculate as to the amount.