530 A.2d 132

Insurance Adjustment Bureau, Petitioner *v.* The Insurance Commissioner for the Commonwealth of Pennsylvania, Respondent.

Argued February 27, 1987, before Judges COLINS and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Richard M. Ochroch,* for petitioner.

*Jerome T. Foerster,* Deputy Attorney General, with him, *Allen C. Warshaw,* Chief, Litigation Section, and *LeRoy S. Zimmerman,* Attorney General, for respondent.

OPINION BY SENIOR JUDGE BARBIERI, August 13, 1987:
Petitioner, Insurance Adjustment Bureau, commenced an action in equity under our original jurisdiction against the Insurance Commissioner of the Commonwealth of Pennsylvania (Commissioner), Respondent, seeking both injunctive and declaratory relief. Petitioner alleged that the third and fourth sentences of Section 5(a) of the Act of December 20, 1983, P.L. 260, compiled at the third and fourth sentences of 63 P.S. §1605(a), prohibiting public insurance adjusters or public insurance adjuster solicitors from soliciting employment from a victim of a loss within a twenty-four hour period of a fire or other catastrophe or occurrence giving rise to a loss, unconstitutionally abridged its freedom of speech in violation of the First and Fourteenth Amendments to the Federal Constitution and Article 1, §7, and Article 3, §32, of the Pennsylvania Constitution.

On April 26, 1984, this Court granted a preliminary injunction enjoining the enforcement of the third and fourth sentences of 63 P.S. §1605(a), hereinafter referred to simply as the "twenty-four hour rule." Petitioner has since filed a motion for summary judgment seeking a permanent injunction and a declaration from this Court that the twenty-four hour rule is unconstitutional. It is that motion for summary judgment that is presently before this Court for disposition.

Public adjusters and public adjuster solicitors are regulated and licensed by the Insurance Commissioner. *See* Act of December 20, 1983, P.L. 260, 63 P.S. §§1601-1608. The challenged statutory language of Section 5(a) of the Act, 63 P.S. §1605(a) provides:

> No public adjuster or public adjuster solicitor shall solicit a client for employment within 24 hours of a fire or other catastrophe or occurrence which is the basis for the solicitation. With respect to a fire, the 24-hour period shall begin at such time as the fire department in charge determines that the fire is extinguished. . . .

As there are no genuine issues of material fact, and the sole issue for our determination revolves around the interpretation of the statutory language, the matter is ripe for summary judgment. *See Keating v. Zemel,* 281 Pa. Superior Ct. 129, 421 A.2d 1181 (1980); Goodrich-Amram 2d §1035(b):2 (1976). We are also cognizant that summary judgment may be granted only in the clearest of cases where the moving party is entitled to judgment as a matter of law. *Kotwasinski v. Rasner,* 436 Pa. 32, 258 A.2d 865 (1969).

We begin our analysis with the recognition that enactments of the General Assembly enjoy a strong presumption of constitutionality with all doubts resolved in favor of sustaining the constitutionality of the legislation. *United States v. Geller,* 560 F. Supp. 1309 (E.D. Pa.

1983), *aff'd, United States v. DeMaise,* 745 F.2d 49 (3d Cir. 1984), *cert. denied,* 469 U.S. 1109 (1985); *James v. Southeastern Pennsylvania Transportation Authority,* 505 Pa. 137, 477 A.2d 1302 (1984). A party challenging the constitutionality of a statute has a heavy burden of rebutting the presumption of constitutionality and showing that the statute clearly, plainly and palpably violates either the Federal or Pennsylvania Constitutions. *Consumer Party of Pennsylvania v. Commonwealth,* 510 Pa. 158, 507 A.2d 323 (1986); *Commonwealth v. Finnegan,* 280 Pa. Superior Ct. 584, 421 A.2d 1086 (1980); *Singer v. Sheppard,* 33 Pa. Commonwealth Ct. 276, 381 A.2d 1007 (1978).

Petitioner argues that the twenty-four hour rule (1) violates its right to freedom of speech under both the Federal and Pennsylvania Constitutions; (2) that it violates its right to equal protection under the laws; (3) that it violates its right to substantive due process; and (4) the language of the twenty-four hour rule is unconstitutionally vague. We shall discuss these contentions in the order stated.

In its argument that the twenty-four hour rule violates its right to free speech, Petitioner acknowledges that the speech subject to regulation here is commercial speech, as opposed to "pure" speech. While commercial speech does lie within the protection afforded by the First Amendment, *Virginia Pharmacy Board v. Virginia Citizens Consumer Council,* 425 U.S. 748, 741 (1976), the United States Supreme Court has recognized that some forms of regulation of commercial speech—such as regulation of false or misleading speech—is constitutionally permissible. *Id.* at 770. *See also Linmark Associates, Inc. v. Willingboro,* 431 U.S. 85, 91-92 (1977). In *Linmark Associates,* the Supreme Court held that commercial speech "cannot be banned because of an *unsubstantiated* belief that its impact is

'detrimental'." 431 U.S. at 92 n. 6. We are also cognizant of the Supreme Court's holding in *Central Hudson Gas & Electric Corp. Public Service Commission of New York*, 447 U.S. 557 (1980), where the Supreme Court set forth a four-part analysis to be used in commercial speech cases. The *Central Hudson Gas* analysis, as set forth by Justice LEWIS F. POWELL, provides:

> In commercial speech cases, then, a four-part analysis had developed. At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

447 U.S. at 566. This test is a level of intermediate scrutiny that is appropriate for a restraint on commercial speech designed to protect consumers from misleading or coercive speech, or a regulation related to the time, place or manner of commercial speech. 447 U.S. at 573 (BLACKMUN J., concurring).

Our first inquiry, therefore, under the *Central Hudson Gas* analysis is whether the expression regulated by the twenty-four hour rule comes under the protection of the First Amendment. The expression advanced by Petitioner here is the solicitation of clients through direct personal contact. Petitioner argues that its solicitation is through information provided to potential clients regarding the services provided by public adjusters and the advantages of using a public adjuster as opposed to dealing with an insurance company adjuster. There can

be no question now that the imparting of accurate and relevant information regarding the services offered by Petitioner to potential clients comes under that species of commercial speech protected by the First Amendment. *Bolger v. Youngs Drug Products,* 463 U.S. 60 (1983); *Virginia Pharmacy Board.* The Commissioner, however, argues that public adjusters and public adjuster solicitors are unscrupulous in their attempts to solicit clients and impart false and misleading information to potential clients in order to dupe them into signing a contract for their services. In support of this contention, the Commissioner points to cases where public adjusters have cajoled, misled, and coerced individuals into signing contracts for public adjuster services. However, the fact that *some* public adjusters engage in false and misleading solicitation tactics does not support the conclusion that *all* public adjusters engage in such behavior. For purposes of our analysis here, we hold that Petitioner's right to solicit clients through the relaying of accurate and relevant information pertaining to the services offered by Petitioner is protected by the First Amendment.

Turning to the second part of our analysis, the Commissioner advances the Commonwealth's interest in protecting consumers from unscrupulous business practices of public adjusters as being sufficiently substantial to justify the restriction on Petitioner's commercial speech. We agree that consumer protection is a legitimate state interest. We also find that the Commonwealth's interest here in protecting the public from being taken advantage of during times of extreme stress and vulnerability is substantial enough to justify some restriction on commercial speech. As our first two inquiries under the *Central Hudson Gas* analysis have yielded positive answers, we must now turn to the last two parts of the analysis to determine whether the

twenty-four hour rule violates Petitioner's First Amendment rights.

The third part of our analysis requires us to determine whether the restriction imposed upon Petitioner's commercial speech directly advances the Commonwealth's interest in consumer protection. We are satisfied that it does. The Commissioner has pointed to testimony from a number of witnesses, including clients, fire marshalls, and investigators from the Insurance Department, that establish a detriment to the consumer from allowing public adjusters to solicit clients within the first twenty-four hours following a fire or other catastrophe. The evidence before the Commissioner established that during that time the casualty loss victim is under severe stress and trauma caused by the recent calamity. During that period, the victim is most vulnerable to being misled by unscrupulous public adjusters or public adjuster solicitors. By requiring a twenty-four hour waiting period, the restriction permits victims to regain some of their composure as well as allows the shock of the immediate loss to wear off. If, during that first twenty-four hour period, a casualty loss victim desires to seek out the services of a public adjuster, the twenty-four hour rule does not prevent the victim from doing so. The restriction only prohibits public adjusters and public adjuster solicitors from actively soliciting clients within the first twenty-four hours after a loss. Therefore, we find that the restriction imposed by the twenty-four hour rule directly advances a legitimate state interest.

We now turn to the final part of our analysis, whether the restriction imposed by the twenty-four hour rule is not more extensive than required to serve that interest. The restriction is very narrowly drawn. Public adjusters and public adjuster solicitors are only prohibited from contacting casualty loss victims within the

first twenty-four hours of a loss. Thus, the restriction on Petitioner's commercial speech is limited in time, twenty-four hours. Next, there is nothing in the restriction that prohibits a casualty loss victim from seeking out the services of a public adjuster during the first twenty-four hours followings a loss. The restriction is on the public adjuster and public adjuster solicitor, not on the victim. The alternative restrictions suggested by Petitioner, sanctions for unscrupulous business practices and a strengthened right in the client to rescind the agreement, do not provide the degree of protection to the consumer during this period of extreme stress and vulnerability as does the twenty-four hour rule. In view of the very limited duration of the restriction of Petitioner's commercial speech rights, coupled with the relative ineffectiveness of proposed alternatives, we find that the restriction is not more extensive than required to serve the articulated state interest. Therefore, under the *Central Hudson Gas* four-part analysis, the twenty-four hour rule is constitutional.

Petitioner next contends that its commercial speech rights are entitled to a greater degree of protection under the Pennsylvania Constitution than that afforded under the First Amendment to the Federal Constitution. We acknowledge that states can provide their citizens enhanced protections under state constitutions greater than those afforded under the Federal Constitution. *See Commonwealth v. Hogan,* 482 Pa. 333, 393 A.2d 1133 (1978); *Coades v. Pennsylvania Board of Probation and Parole,* 84 Pa. Commonwealth Ct. 484, 480 A.2d 1298 (1984), *allowance to appeal denied,* No. 143 M.D. Allocatur Dkt. 1984 (Pa. filed March 13, 1985). Our analysis of the freedom of speech guarantees contained in the Pennsylvania Constitution satisfy us that the twenty-four hour rule is constitutional.

The guarantee of freedom of speech contained in the Pennsylvania Constitution of 1874 is found in Article 1, Section 7, that in pertinent part provides:

§7. *Freedom of press and speech; libels*

. . . The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty. . . .

This provision is similar to the guarantee found in Article 9, Section 7, of the Pennsylvania Constitutions of 1838 and 1790. Section 35 of the Pennsylvania Constitution of 1776 contained a similar guarantee of free speech. In *Johnson v. Pilgrim Mutual Insurance Company*, 284 Pa. Superior Ct. 314, 425 A.2d 1119 (1981), the Superior Court held that commercial speech, *i.e.* speech that proposes a commercial transaction, is not entitled to the same protection under the Pennsylvania Constitution as non-commercial speech. *Id.* at 321-322, 425 A.2d at 1123. We are also cognizant that, under Article 1, §7, of the Pennsylvania Constitution, the prior restraint of the exercise of protected free speech rights is generally prohibited. *See e.g., Willing v. Mazzocone*, 482 Pa. 377, 393 A.2d 1155 (1978); *Goldman Theatres v. Dana*, 405 Pa. 83, 173 A.2d 59 (1961), *cert. denied*, 368 U.S. 897 (1961). Pennsylvania courts have recognized that restrictions of limited duration and purpose may be constitutionally imposed. *See e.g., Brush v. Pennsylvania State University*, 489 Pa. 243, 414 A.2d 48 (1980) (state university restriction on canvassing in residence halls limiting such activities to the main lobby did not violate canvassers free speech rights); *Brightbill v. Rigo, Inc.*, 274 Pa. Superior Ct. 315, 418 A.2d 424 (1980) (temporary restraints of limited duration and purpose are constitutional). We are, therefore, satisfied that, in view of the limited duration

of the restriction on Petitioner's ability to solicit business, to-wit twenty-four hours, and the demonstrable harm shown by the Commissioner to be facing the consumers if the restriction is not left intact, we hold that the twenty-four hour rule does not violate the free speech guarantee contained in Article 1, §7, of the Pennsylvania Constitution.

We now turn to Petitioner's argument that the twenty-four hour rule violates its right to equal protection of the laws as guaranteed by the Fourteenth Amendment to the Federal Constitution. It bases this contention on the fact that only *public* adjusters are prohibited from soliciting employment within the first twenty-four hours of a catastrophe while insurance company agents and adjusters are permitted to contact casualty loss victims regarding the settlement of claims. This disparate treatment of public and insurance company adjusters, Petitioner argues, violates its right to equal protection. We respectfully disagree.

The concept of equal protection under the Fourteenth Amendment requires that uniform treatment be given to similarly situated parties. *Reynolds v. Sims*, 377 U.S. 533 (1964), *reh. denied,* 379 U.S. 870 (1964); *Kaelin v. Warden*, 334 F. Supp. 602 (E.D. Pa. 1971); *Commonwealth v. Kramer*, 474 Pa. 341, 378 A.2d 824 (1977). Thus, in order to claim that disparate treatment is violative of equal protection, a person making an equal protection claim must show that he or she is similarly situated to someone who received different treatment. *Gobla v. Crestwood School District*, 609 F. Supp. 972 (M.D. Pa. 1985). The pertinent inquiry, then, for our analysis of Petitioner's equal protection claim is whether Petitioner, and other public adjusters, are "similarly situated" to insurance company adjusters so as to render the restrictions applicable to public adjusters and not to insurance company adjusters a vio-

lation of equal protection. We are satisfied that the two are not "similarly situated" and that the disparate treatment of public adjusters as opposed to company adjusters is not violative of equal protection. The relationship of Petitioner, and any other public adjuster or public adjuster solicitor, to a casualty loss victim is one of unrelated parties where one seeks to establish a business, commercial or contractual relationship with the other. By contrast, the relationship between a company adjuster and the victim is already one of contract having been established by a pre-existing contract of insurance purchased by the victim from the company adjuster's firm. Thus, a public adjuster such as Petitioner seeks to *establish* a contractual relationship by its contact with a casualty loss victim while a company adjuster contacts the victim pursuant to a *pre-existing* contractual relationship between the two. Petitioner, and other public adjusters or public adjuster solicitors, are clearly not "similarly situated" to company adjusters. Equal protection does not require that situations that are different in fact be treated in law as though they were the same. *Wells v. Civil Service Commission,* 423 Pa. 602, 225 A.2d 554 (1967), *cert. denied,* 386 U.S. 1035 (1967). Since public adjusters are not on the same footing vis-a-vis the casualty loss victim as is a company adjuster, equal protection is not offended by the restriction placed upon solicitation by public adjusters and public adjuster solicitors.

Our holding that the twenty-four hour rule does not violate the Fourteenth Amendment's guarantee of equal protection also compels us to hold that it does not violate Article 3, §32, of the Pennsylvania Constitution that prohibits special laws. In *Baltimore & Ohio Railroad Co. v. Department of Labor and Industry,* 461 Pa. 68, 334 A.2d 636 (1975), *appeal dismissed,* 423 U.S. 806 (1975), the Pennsylvania Supreme Court held that the

protection afforded by Article 3, §32, of the Pennsylvania Constitution is substantially the same as that afforded by the equal protection clause of the Fourteenth Amendment. *See also Kramer,* 474 Pa. at 346, 378 A.2d at 826. Therefore, if the twenty-four hour rule satisfies the equal protection clause of the Fourteenth Amendment, under *Kramer* and *Baltimore & Ohio Railroad Co.* it also satisfies the requirements of Article 3, §32, of the Pennsylvania Constitution.

We further find that the twenty-four hour rule does not violate any substantive due process rights of the Petitioner. In *Cott Beverage Corp. v. Horst,* 380 Pa. 113, 110 A.2d 405 (1955), the Pennsylvania Supreme Court held that the General Assembly may not, under the guise of protecting the public interest, arbitrarily interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations. *Id.* at 118, 110 A.2d at 407. As we held in our analysis of Petitioner's free speech claim, the restriction on solicitation embodied in the twenty-four hour rule is reasonable and narrowly drawn. As such, we hold that it does not arbitrarily and unnecessarily impinge upon Petitioner's right to do business and is a lawful exercise of the Commonwealth's police power.

Petitioner's final argument is that the twenty-four hour rule is unconstitutionally vague. Its vagueness argument is made in two parts. Initially, Petitioner argues that the statute fails to define the term "extinguished" when referring to fires and the commencement of the twenty-four hour prohibition period. The second part of its void for vagueness argument is that the statute does not clearly specify what conduct is prohibited.

A statute is unconstitutionally vague and violative of due process where persons of common intelligence must guess at its meaning and differ as to its application. *Lanzetta v. State of New Jersey,* 306 U.S. 451

(1939); *City of Chester v. Elam,* 408 Pa. 350, 184 A.2d 257 (1962); *Knight v. Pennsylvania Board of Probation and Parole,* 98 Pa. Commonwealth Ct. 88, 510 A.2d 402 (1986). Reviewing the statutory language, we find that it sufficiently specifies what conduct is prohibited and when so as to pass muster.

The twenty-four hour rule prohibits solicitation by a public adjuster or public adjuster solicitor within twenty-four hours of a fire or other catastrophe. The statute also provides, with respect to a fire, that the twenty-four hour period commences when the fire department in charge determines that the fire is extinguished. We are satisfied that the statute amply informs Petitioner what conduct is prohibited and for what duration. While the statute does not specially define the term "extinguished," Section 1903 of the Statutory Construction Act of 1972, 1 Pa. C. S. §1903, provides that the term will be construed in accordance with its common and approved usage. Additionally, the statute provides a point of reference for the Petitioner, the fire department in charge, that is given the duty under the statute of determining when the fire is in fact extinguished. A public adjuster or public adjuster solicitor can easily determine when a fire is extinguished simply by inquiring of the fire department in charge.

The second part of Petitioner's void for vagueness argument pertains to the conduct that the statute prohibits. Petitioner argues that the statute is unclear what kind of conduct a public adjuster or public adjuster solicitor may not engage in during the initial twenty-four hours covered by the statute. The statute clearly prohibits public adjusters and public adjuster solicitors from actively seeking out clients within twenty-four hours of a catastrophe or fire. Contrary to Petitioner's assertion, it does not prevent a public adjuster from

answering questions or providing information to clients who seek out a public adjuster. Under the terms of the statute, a public adjuster does not violate the twenty-four hour rule if he or she responds to a casualty loss victim's request for information or services that was instigated by the victim. What the statute prohibits is the unrequested solicitation of employment by public adjusters and public adjuster solicitors within the first twenty-four hours after a fire or catastrophe. Under the statute, public adjusters will no longer be able to use fire and police scanners to learn of a fire or catastrophe and arrive at the scene while the fire is still raging and seek to enter into a contract for their services.

Having found that Petitioner is not entitled to judgment in its favor as a matter of law, we must deny its motion for summary judgment. Additionally, having found that the twenty-four hour rule is constitutional, we shall also dissolve our previous order of April 26, 1984, granting a preliminary injunction enjoining the enforcement of the twenty-four hour rule. While the Commissioner has not moved for summary judgment we shall grant judgment in his favor as we have found the challenged statutory language constitutional and the interests of judicial economy allow the entry of judgment for a non-moving party in the proper case. *See Mohn v. American Casualty Co.*, 458 Pa. 576, 326 A.2d 346 (1976); *Weiss v. Motorists Mutual Insurance Co.*, 68 Berks 152 (Pa. C.P. 1976). *See also* Goodrich-Amram 2d §1035(b):6 (1976).

### ORDER

Now, August 13, 1987, upon consideration of the Motion for Summary Judgment filed by Insurance Adjustment Bureau, and the briefs and arguments of counsel, the Motion for Summary Judgment is denied and judgment is entered in favor of the Insurance Commis-

sioner of the Commonwealth of Pennsylvania. The Preliminary Injunction granted by Order of this Court dated April 24, 1984, is hereby dissolved.

---

DISSENTING OPINION BY JUDGE COLINS:

I must respectfully dissent. This so-called "twenty-four hour rule" was written solely for the benefit of the insurance industry, to the detriment of the public at large, as well as public insurance adjusters. The portion of the statute in question was prepared as a legislative boon to fire and casualty insurers and as such is a "special law" which should be stricken pursuant to Article III, §32 of the Pennsylvania Constitution.