## Commonwealth *v.* Meehan, Appellant.

560

Argued March 28, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

 

*Mary Alice Duffy*, with her *Duffy and Duffy*, for appellant.

*Burton Satzberg*, Assistant District Attorney, with him *Arlen Specter*, Assistant District Attorney, *Paul M. Chalfin*, First Assistant District Attorney, and *James C. Crumlish, Jr.*, District Attorney, for Commonwealth, appellee.

OPINION BY MONTGOMERY, J., June 13, 1962:

This is an appeal from judgment of sentence on the charges of aggravated robbery and conspiracy. Appellant was tried with a co-defendant, Robert McKnight,

by the court (ULLMAN, J.) without a jury and each was found guilty on both charges. Motions for a new trial and in arrest of judgment filed nunc pro tunc having been refused, sentence was imposed and this appeal on the part of Meehan followed.

The questions involved, as stated in appellant's brief, relate to (1) the sufficiency of the evidence as to identity, (2) the admission of testimony as to a conversation one of the detectives in charge of the case had with appellant from which flight and consciousness of guilt could be inferred, (3) the duty of the Commonwealth to produce all evidence regardless of whether it is favorable or unfavorable to its side of the case, (4) the violation of appellant's rights to have effective assistance of counsel and a speedy trial, and (5) an abuse of discretion in sentencing him.

This was the second trial of this case. Previously, in May of 1961, it was tried before BLANC, J., and a jury, which returned a verdict of guilty. Judge BLANC subsequently granted a new trial but refused to arrest judgment.

The facts of the occurrence which caused the prosecution as set forth in appellant's "History of the Case" and which do not vary materially from the statement in appellee's brief are:

"On June 12, 1957 Harry Lucet, the owner of a check cashing business, left his home in West Philadelphia with a briefcase containing $2,000 in cash, about $8,000 in checks and business records. He went to the bank and obtained $8,000 more in cash and proceeded to his office at 26th and Reed Streets. He parked his automobile at the northwest corner of 26th and Reed Streets and was crossing the street to go to the office on the southeast corner of 26th and Reed Streets, when a man in front of him tugged at his briefcase and said, 'Give me that if you don't want to get killed.' He was slugged over the head with a blunt instrument by some-

one in the rear. The two robbers then ran to an automobile parked in the 2600 block of Reed Street.

"A P.T.C. bus operator got the license number of the automobile. A roadblock was set up, and the automobile was stopped fifteen minutes later fleeing from the scene and the driver, one John Damanskis, was arrested and taken into custody. No money was found in his possession or in the car. Neither John Meehan nor Robert McKnight were present in the automobile."

McKnight was arrested the next day, June 13, 1957, but appellant was not arrested until one year later, June 16, 1958. According to the testimony of Detective DiMuzzio who investigated the case, appellant told him that he left town because he heard that the police were looking for him, and that he had been in Chicago. This accounts for the delay in arresting him. However, he denied to Detective DiMuzzio any knowledge of this holdup.

It is unfortunate and disturbing to those who are interested in the efficient administration of justice to learn of the long delay in bringing these cases to trial. The indictments were returned by the June 1957 Grand Jury, the appellant was arrested June 16, 1958, the co-defendant on June 13, 1957, but the first trial was not held until May 29, 1961. Many reasons were assigned for this delay. The cases were listed for trial thirteen times and each time they were either postponed on motion of defense counsel or the district attorney, or marked "not reached" and postponed for that reason. The present day problems of the courts in our large metropolitan areas, both civil and criminal, are well known, and everyone associated with the courts is endeavoring to suggest means of solving them. Until the answer is found the rights of persons having contact with courts will be prejudiced to some extent, particularly in cases where an accused who is unable to provide bail is held in confinement during the delay.

Although article I, section 9 of the Constitution of Pennsylvania and the sixth amendment to the United States Constitution provide that an accused shall have a speedy trial, we have held that after a trial has taken place, unreasonable delay may not be used as a reason for arresting the judgment resulting therefrom. *Commonwealth v. Grant,* 121 Pa. Superior Ct. 399, 183 A. 663, wherein this Court, speaking through its present President Judge Rhodes, quoted from *Worthington v. United States,* 1 F. 2d 154, ". . . If the defendant desired a speedy trial, it was his duty to ask for it, and we must assume that it would have been granted, had he made any effort to procure it. His long and uninterrupted acquiescence in the delay bars his right to complain." The same reason would apply as to a new trial. We may add that in the present cases appellant did not request a trial but, on the contrary, his counsel moved for continuances on four occasions when they were listed for trial. Nor is appellant prejudiced in so far as his sentence is concerned, since it was made effective as of the date of his original commitment, June 18, 1958.

Appellant also contends that he was not properly represented at his trial. At his first trial he was represented by Edmund E. DePaul, Esquire, an Assistant Voluntary Defender, and at his second trial by Julian B. P. Brereton, Esquire, another Assistant Voluntary Defender who was appointed to represent both defendants. The substitution was due to the fact that Mr. DePaul was then engaged in another case and McKnight's prior counsel had withdrawn. Appellant now complains that due to this last minute substitution of counsel his case was not properly presented, and that his rights were otherwise prejudiced in that his newly appointed counsel was at the same time representing his co-defendant whose interest conflicted with that of appellant. However, no such complaint was made to

the lower court at the commencement of, or during the trial.

It is not uncommon for one who has been unsuccessfully defended to complain about the tactics of his counsel, and from what testimony has been referred to in the briefs and the opinion of the court below we see no grounds for charging counsel with any neglect or inefficiency in handling appellant's case. The situation mentioned in *Commonwealth ex rel. Davis v. Baldi*, 181 Pa. Superior Ct. 251, 124 A. 2d 390, and *Commonwealth ex rel. Richter v. Burke*, 175 Pa. Superior Ct. 255, 103 A. 2d 293, is not present here. Judge ULLMAN learned of this complaint after he had sentenced appellant. He then vacated the sentence and held a hearing at which appellant and his co-defendant were heard. Having been satisfied that they had been properly represented he resentenced them. This hearing was held after Miss Duffy, appellant's present counsel, entered the case and was granted the privilege of filing motions nunc pro tunc and in arrest of judgment which had not been filed previously.

However, the charge of representing conflicting interests is of more serious consideration. *Commonwealth ex rel. Whitling v. Russell*, 406 Pa. 45, 176 A. 2d 641. In that case the conflict was admitted. It is not admitted in the present case. Consequently, we must examine the facts to determine if one existed. It is the Commonwealth's contention that both co-defendants committed this crime. It is the contention of the defendants that neither one committed it. There is, therefore, agreement and not conflict. Appellant's counsel refers to the fact that each defendant had been previously convicted of serious crimes and for that reason needed the undivided attention of his counsel. This argument is persuasive to some extent, but is not sufficient to convince us that it constituted a conflict of interest as discussed in the *Russell* case; nor can we ac-

cept learned counsel's other argument that a conflict existed because of the uncertainty of the victim in identifying them as his assailants. This may well have been helpful to defendants, but we cannot see that it was prejudicial.

We must conclude, as did Judge ULLMAN, that appellant and his co-defendant had no conflicting interests and had effectual representation at the trial of their cases.

The Commonwealth is not required to offer testimony of witnesses that will not be helpful to its case. Although the district attorney, as a quasi-judicial officer, should be motivated by a desire to accomplish justice, much must be left to his discretion under the general direction of the trial judge, in regard to calling witnesses for the Commonwealth. *Commonwealth v. Giacobbe,* 341 Pa. 187, 19 A. 2d 71; *Commonwealth v. Drew,* 190 Pa. Superior Ct. 478, 154 A. 2d 285; *Commonwealth v. Horn,* 186 Pa. Superior Ct. 429, 140 A. 2d 847, affirmed 395 Pa. 585, 150 A. 2d 872. There was no concealment of the witness, Jean Amberg, or of any evidence in this case. She had appeared at a prior trial of Damanskis, the driver of the get-away car, and was known to defendants. They were also aware of the prior records relating to fingerprints on that car.

Nor do we find an error in the action of the trial judge in admitting the testimony of Detective DiMuzzio as to the admission made by appellant that he left the jurisdiction in order to avoid arrest. Admissions of an accused in criminal cases are properly admitted into evidence and may be considered in connection with other facts or circumstances to prove guilt. This was admission of flight to avoid arrest from which consciousness of guilt could be inferred. *Commonwealth v. Luccitti,* 295 Pa. 190, 145 A. 85; *Commonwealth v. Lewis,* 187 Pa. Superior Ct. 231, 144 A. 2d 441; *Commonwealth v. Cerzullo, Agostino Appeal,* 175 Pa. Su-

perior Ct. 330, 104 A. 2d 179. Such an inference need not necessarily be made, but it was for the trial judge's decision in this case, particularly in face of the denial by appellant to Detective DiMuzzio that this was not the crime from which he fled.

The testimony submitted by the Commonwealth on identification was sufficient, if believed; and it was accepted as credible by the jury in the first trial and by Judge ULLMAN in the second. It consisted principally of the testimony of the victim but it was definite and certain. He said, "There is no doubt in my mind, I could see that face for the rest of my life." He had previously identified appellant's co-defendant McKnight the day after the robbery, and appellant one year later when he was apprehended. At this trial he identified appellant as the one who had grabbed his bag, although at the trial of Damanskis he had said the one who had grabbed it had been McKnight. However, at the first trial of appellant and McKnight he had corrected this and testified in the same fashion as he testified at the second trial.

Counsel for appellant argues earnestly that since the identification of appellants depends on one witness, who has admitted a prior mistake in his identification, that it is not sufficient to sustain this verdict and sentence. In the light of prior decisions of our courts we cannot accept this persuasive argument. It is not essential to the admissibility of identifying testimony that it be free from doubt, and the testimony of one witness may establish it. *Commonwealth v. Kloiber,* 378 Pa. 412, 106 A. 2d 820. It may even be established by circumstantial evidence, *Commonwealth v. Lowry,* 374 Pa. 594, 98 A. 2d 733. Some testimony may be less positive than other evidence, but even then it is admissible, although accepted with caution. We are of the opinion that it was sufficient in this present case. It was positive at the trial and at all other times.

The only uncertainty was in the statement made at the trial of the driver relating to the part each played in the robbery, viz., which grabbed the bag and which struck him. He corrected this at the first trial and persisted at the second trial in his identifications as well as the correct part played by each.

Finally, appellant charges Judge ULLMAN with abuse of discretion in sentencing him. His main argument is that his co-defendant was promised a recommendation for some leniency after he had served five years of his sentence, which recommendation was not promised to appellant. This is not a valid argument. Both defendants were given the same sentences, the maximum allowed by law, because each had prior criminal records. But it must be said for Judge ULLMAN, he was most considerate to both men. He not only allowed motions for new trials and in arrest of judgment to be filed long after the time limit had expired for filing them, but reconsidered his sentences several times before making them final. Within the limitation prescribed by statute the matter of sentences is entirely within the discretion of the trial judge, and he need not give identical sentences to co-defendants. *Commonwealth v. Bilinski*, 190 Pa. Superior Ct. 401, 154 A. 2d 322; *Commonwealth of Pa. v. Fitzgerald*, 101 Pa. Superior Ct. 308.

Judgment affirmed.

DISSENTING OPINION BY FLOOD, J.:

The appellant was convicted of robbery. The victim, Mr. Harry Lucet, was the only eyewitness. At the first trial, held before Judge BLANC commencing May 29, 1961, the appellant, Meehan, was represented by a member of the staff of the Defender Association of Philadelphia. A co-defendant, McKnight, was represented by private counsel. The jury found both defend-

568

ants guilty, but Judge Blanc granted a new trial. Mc-Knight's private counsel withdrew from the case and another member of the staff of the Defender Association, who had not participated in the first trial, undertook to represent both Meehan and McKnight at the second trial. At the conclusion of this trial, at which a jury was waived, Judge Ullman found both defendants guilty. Meehan has appealed upon the ground, among others, that the representation of both defendants by the same counsel at the second trial created a conflict of interest which prejudiced his defense.

Although the robbery occurred on June 12, 1957, Meehan was not apprehended until June 16, 1958. At the preliminary hearing for McKnight, held before Magistrate Mongelluzzo on June 14, 1957, Lucet identified McKnight, who was present at the hearing, as the man who took his brief case. He said that, as he reached the curb at the time of the robbery, he saw Mc-Knight "bounce on me and start tugging on my briefcase". He said he was hit over the head by a man in back of him and that both then fled in a car parked nearby. He was then asked: "You are certain that the defendant is the man who took the money from your possession? A. Yes I am. By the Court: Q. You show me the man that robbed you and took the money from you? A. This man here [McKnight]. He took the bag containing the money."

On January 29, 1959, Lucet testified at the trial of John Damanskis, a third man who was accused as the driver of the getaway car. Both Meehan and McKnight were present at the Damanskis trial. During the course of the trial the prosecutor stated: "Bring these two gentlemen forth, stand out here". He then asked Lucet ". . . can you identify anybody in this courtroom, either or both of the two men that attacked you on the street? A. Yes, I can. Q. Which one was it? A. The man on the right [McKnight]. The man on the left was

in back of me, and as he ran up the street, of course, I only had a view of his back."

At the first trial of Meehan and McKnight, which occurred almost four years after the crime, Lucet completely contradicted his previous testimony that the man in front was McKnight and that he only had a view of the other man's back. For the first time he identified Meehan as a participant in the robbery and stated that Meehan was the man in front who had grabbed his bag. Also, for the first time he stated that he got a glimpse of the face of the other man because, as both were running away, "[t]he other party" [McKnight] "happened to turn around and look back for a moment". Apparently because of these and other contradictions in Lucet's testimony, Judge BLANC granted both defendants new trials following jury verdicts of guilty.

At the second trial before Judge ULLMAN, Lucet identified Meehan as the man in front who grabbed the bag of money and McKnight as the man who struck him from behind. Lucet denied that he ever had identified McKnight as being the man in front prior to the Damanskis trial. He said he previously had identified McKnight only as one of the participants in the crime. Lucet further testified that he had identified both defendants at the Damanskis trial, that he had mistakenly identified McKnight as the one who grabbed the bag, but that he had corrected this mistake at the previous trial. When asked if there was any doubt in his mind about the identity of "these men" he replied: "There is no doubt in my mind. I could see that face for the rest of my life." He subsequently identified "that face" as being the face of "[t]he man that came forward to me and grabbed the bag." He testified that he got a good view of the man in front because he was facing him and that "[t]he fellow in back of me I got the glance of the profile as he ran from me."

In his cross-examination counsel did not call to the court's attention, either the fact that Lucet had identified McKnight as the person who grabbed the bag of money at McKnight's preliminary hearing held two days after the robbery, or the fact that he had identified only McKnight at the Damanskis trial. In fact, counsel's cross-examination concerning Lucet's testimony at the Demanskis trial indicates a mistaken belief on his part that Lucet had identified both defendants at the Damanskis trial. He so argued to the court, and aimed his cross-examination only at the fact that Lucet previously had given conflicting testimony as to which defendant was in front and which was in back.

On November 30, 1961, prior to the decision of the Supreme Court which reversed our holding in *Commonwealth ex rel. Whitling v. Russell,* 195 Pa. Superior Ct. 277, 171 A. 2d 819 (1961), reversed, 406 Pa. 45, 176 A. 2d 641 (1962), Judge ULLMAN denied motions in arrest of judgment and for a new trial and sentenced Meehan to ten to twenty years in the Eastern State Penitentiary. In refusing a new trial, on the ground of an alleged conflict of interest, Judge ULLMAN no doubt relied upon the decision of this court in the *Whitling* case, supra. However, in view of the reversal of that holding after Judge ULLMAN's order denying a new trial, in my opinion that order should be reversed and a new trial granted.

The Supreme Court in the *Whitling* case said: "If, in the representation of more than one defendant, a conflict of interest arises, the mere existence of such a conflict vitiates the proceedings, even though no *actual* harm results. The potentiality that such harm *may* result, rather than that such harm *did* result, furnishes the appropriate criterion." 406 Pa. at page 48, 176 A. 2d at page 643.

In my opinion, the conflict of interest was less likely to be productive of harm in the *Whitling* case than

in the case before us. There the relator, Richard Whit-ling, testified against his brother, Ralph, who was his co-defendant, and Ralph testified in favor of Richard. In the case we are now considering the evidence shows that the prosecuting witness got a good look at only one of the two robbers, the one who snatched his brief-case. On June 14, 1957, two days after the robbery, with only McKnight present, and at the Damanskis trial on January 29, 1959, with both Meehan and Mc-Knight present, this witness said positively that it was McKnight who took his briefcase. The first time he testified that it was Meehan was at the trial before Judge BLANC, held almost four years after the commis-sion of the crime. Under these circumstances, we can-not say that an attorney free of the responsibility of representing McKnight as well as Meehan, would not have used these facts to the advantage of Meehan and to the disadvantage of McKnight.

Each of the defendants was entitled to have his case presented to the jury by counsel unhampered by duties to the other. Each was entitled to have any proper ar-gument made for him, even at the expense of the other. In view of the testimony of Mr. Lucet at the various proceedings above detailed, it is difficult to see how this could be done while they were represented by the same counsel. This is a case "where the mere existence of . . . a conflict vitiates the proceedings". For that reason a new trial should be granted.