429 A.2d 689

**COMMONWEALTH of Pennsylvania,**

v.

**Johnnie BOONE, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 10, 1980.

Filed May 8, 1981.

1

2

4

Leonard Sosnov, Assistant Public Defender, Philadelphia, for appellant.

Alan Sacks, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WICKERSHAM, HOFFMAN and VAN der VOORT, JJ.

HOFFMAN, Judge:

Appellant has raised numerous challenges to his convictions on charges of escape, conspiracy to escape, and robbery. Finding no merit in any of appellant's contentions, we affirm the judgment of sentence.

On May 29, 1978, seven inmates, including appellant, used hooks and ropes to climb through a skylight and over a wall and escape from Holmesburg Prison in Northeast Philadelphia. Later that evening appellant and his fellow escapees robbed three men of approximately $1,000 at a tire store several blocks from the prison. The seven then fled the scene in a van which belonged to one of the robbery victims. On the morning of May 31, 1978, police discovered appellant hiding in a house in South Philadelphia, thirteen to fourteen miles from the prison, and arrested him along with four of the other escapees also found in the house. Appellant was subsequently tried jointly with five of his fellow escapees and convicted by a jury of the charges set forth above.[1] Following denial of post-verdict motions and imposition of sentence, appellant took this appeal.

Appellant contends first that the evidence is insufficient to support his conviction of robbery because of deficiencies in the testimony of the only witness to identify him at trial. Specifically, appellant claims that the witness, David Scott, failed to identify him positively at trial and failed to identify him at all during a photo display conducted

1. The seventh member of the group pleaded guilty to charges arising out of the incident.

within hours after the robbery.[2]  The record reveals that on direct examination Scott did identify appellant as one of the robbers.  Subsequently, after extensive cross-examination, Scott stated that appellant "looked like" one of the men who had robbed him, but conceded that his identification was somewhat "fuzzy" and that his recollection of the incident was fresher nearer to the time of its occurrence.  In *Commonwealth v. Hickman*, 453 Pa. 427, 309 A.2d 564 (1973), our Supreme Court stated that "[p]roof beyond a reasonable doubt of the identity of the accused as the person who committed the crime is essential to a conviction. . . .  The evidence of identification, however, needn't be positive and certain in order to convict, although any indefiniteness and uncertainty in the identification testimony goes to its weight." *Id.*, 453 Pa. at 430, 309 A.2d at 566 (Citations omitted).  *Accord, Commonwealth v. Murray*, 246 Pa.Super. 422, 429–30, 371 A.2d 910, 913 (1977) (evidence held sufficient despite witness' concession on cross-examination that he was not "one-hundred per cent sure" of his identification of defendant).  Accordingly, any uncertainty in Scott's identification of appellant was a matter for the jury in passing on weight and credibility, and did not render the evidence insufficient to convict.[3]  Similarly, the fact that Scott failed to identify appellant during the photo display bears only on the weight and credibility of his trial testimony and does not undermine the conviction.  *See Commonwealth v. Davis*, 466

**2.**  Appellant contends that the Commonwealth's proof of robbery is further weakened by the fact that neither of the other two robbery victims identified him at or before the trial.  Because the testimony of one witness may suffice to establish the identification of the accused, however, *Commonwealth v. Meehan*, 198 Pa.Super. 558, 566, 182 A.2d 212, 217 (1962), *rev'd on other grounds*, 409 Pa. 616, 187 A.2d 579 (1963), the absence of additional identification testimony does not necessarily undermine the Commonwealth's case.

**3.**  Appellant's reliance on *Commonwealth v. Farrington*, 219 Pa.Super. 104, 280 A.2d 623 (1971), in this regard is misplaced.  The testimony of the identifying witness in *Farrington* was considerably more vague and uncertain than that of Scott in the present case.  Moreover, in *Farrington* the prosecution based its case solely on the identification testimony in question, whereas here there was considerable circumstantial evidence linking appellant to the robbery.

Pa. 102, 351 A.2d 642 (1976); *Commonwealth v. Tate,* 229 Pa.Super. 202, 323 A.2d 188 (1974). Moreover, the lower court properly instructed the jury to receive Scott's identification testimony with caution since it had been weakened on cross-examination. *See Commonwealth v. Mouzon,* 456 Pa. 230, 233–34, 318 A.2d 703, 705 (1974); *Commonwealth v. Kloiber,* 378 Pa. 412, 424, 106 A.2d 820, 826–27, *cert. denied,* 348 U.S. 875, 75 S.Ct. 112, 99 L.Ed. 688 (1954). Under these circumstances we find no merit in appellant's challenge to the sufficiency of the evidence of robbery.

■ Appellant contends next that several statements which the prosecutor made during his closing argument were so prejudicial as to necessitate the grant of a new trial. In the first of these statements the prosecutor referred to an identification of appellant which Scott had made at the preliminary hearing and which was not in evidence at trial. Appellant's objection to this statement was sustained, and the lower court carefully instructed the jury that the prosecutor's reference to the preliminary hearing testimony was not in evidence and was to be disregarded. Subsequently, the court denied appellant's request for a mistrial based on the statement. Appellant argues that the reference to Scott's preliminary hearing identification of him was particularly prejudicial because it was likely to enhance the credibility of what he characterizes as Scott's weak identification of him at trial.

Our Supreme Court has stated that "comments by the district attorney do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict." *Commonwealth v. McNeal,* 456 Pa. 394, 400, 319 A.2d 669, 673 (1974). *See also Commonwealth v. Byrd,* 490 Pa. 544, 559, 417 A.2d 173, 181 (1980); *Commonwealth v. Van Cliff,* 483 Pa. 576, 582, 397 A.2d 1173, 1176, *cert. denied,* 441 U.S. 964, 99 S.Ct. 2412, 60 L.Ed.2d 1070 (1979). Here, the challenged statement was an isolated remark during the course of a trial

which lasted more than four weeks. Moreover, the lower court immediately and succinctly cautioned the jury to disregard the statement. Under these circumstances, although it was improper for the prosecutor to refer to Scott's pretrial identification of appellant, we do not believe that the "unavoidable effect" of the statement was to deprive appellant of an objective determination by the jury. Accordingly, the statement does not warrant granting appellant a new trial. *Cf. Commonwealth v. Byrd, supra* (prosecutor's statement at close of Commonwealth's case that there were "four other eyewitnesses" whom he would not call did not warrant new trial where statement was isolated remark during three-day trial and lower court gave sufficient cautionary instruction); *Commonwealth v. Rigler*, 488 Pa. 441, 412 A.2d 846 (1980) (prosecutor's statement implying that defendant could not be trusted with an unloaded gun handed to him for identification did not warrant new trial where remark was isolated one occurring during month-long trial and lower court instructed jury to disregard prosecutor's comment).

In the second statement to which appellant directs our attention, the prosecutor suggested to the jury that if they acquitted the defendants, they would be sending a message to the remaining inmates of Holmesburg Prison that they could escape the prison with impunity.[4] This statement also provoked a motion for a mistrial, which the lower court denied. Appellant now contends that the state-

4. The Commonwealth denies that the prosecutor ever made such a statement. Indeed, as the Commonwealth points out and appellant concedes, the transcript of the closing argument does not reveal any such statement. The record does reveal, however, that immediately following the prosecutor's argument, counsel for several of the defendants, including appellant, joined in moving for a mistrial on the basis of such a statement. Moreover, counsel for appellant filed a timely motion to supplement the transcript in which he asserted, *inter alia*, that the statement had been omitted and requested correction of the transcript accordingly. Although the court never acted on this aspect of appellant's motion, the prosecutor did state at argument on post-verdict motions that he had no objection to any of appellant's requests for supplementation. Under these circumstances we conclude that the prosecutor did make the statement in question.

ment was intended to kindle in the jury the fear of mass escape, and hence warrants reversal.

"Although appeals to prejudice and passion are not to be approved, we have held that a District Attorney in his arguments, within proper limits, may argue for law and order and remind the jury of the danger to the community posed by persons prone to resort to violence." *Commonwealth v. Feiling*, 214 Pa.Super. 207, 212, 252 A.2d 200, 203 (1969). *See also Commonwealth v. Nesbitt*, 276 Pa.Super. 1, 12, 419 A.2d 64, 70 (1980); *Commonwealth v. Lee*, 261 Pa.Super. 48, 52–53, 395 A.2d 935, 938 (1978); *Commonwealth v. McHugh*, 187 Pa.Super. 568, 576, 145 A.2d 896, 901 (1958). In *Commonwealth v. Nesbitt, supra,* this Court, faced with prosecutorial statements which were substantially more inflammatory than those here in question,[5] concluded "that the lower court did not abuse its discretion in refusing to grant a mistrial." 276 Pa.Super. at 12–13, 419 A.2d at 70. *A fortiori*, the prosecutor's "message to the inmates" statement here does not warrant disturbing the judgment of the lower court.

In the final statement which appellant challenges, the prosecutor informed the jury that he would not express his opinion as to credibility or guilt because it was unethical for an attorney to do so. Then, referring to counsel for defendants, the prosecutor said, "I don't know what law school they went to, but they should have said the same thing." The lower court overruled appellant's objection and subsequently denied a motion for a mistrial based on this statement. Appellant now contends that the prosecutor's statement unfairly implied that his counsel was unethical.

5. In *Nesbitt* the prosecutor characterized the victims of a robbery as "some of the least children of our society," and asked the jury, "[C]an't we protect them? Can you do something for them?" 276 Pa.Super. at 11, 419 A.2d at 69. The prosecutor then went on to tell the jury that "if we cannot protect [one of the victims] in his castle, his little piece of security up there in North Philly, we might as well give it all up. Let's all go get armed.... Bring back Dodge City.... A man's home is his castle and a man has a right to security in his castle." *Id.*, 276 Pa.Super. at 11–12, 419 A.2d at 70.

■ In *Commonwealth v. Nesbitt, supra,* the prosecutor stated in his closing argument that defense counsel had violated the Canons of Ethics by asserting in his summation that his client was innocent. We held that although it had been improper for the prosecutor to characterize defense counsel as unethical, the impact of the prosecutor's remark "was not so prejudicial as to require granting appellant a new trial." 276 Pa.Super. at 11, 419 A.2d at 69. In the present case the prosecutor did not directly characterize defense counsel as being unethical; at most he did so by implication. Consequently, here, as in *Nesbitt,* while we do not condone the action of the prosecutor, we believe that the statement in question was not so prejudicial as to warrant reversal.

Appellant next challenges the lower court's refusal to admit evidence of a defense to the charge of escape. At trial appellant attempted to present evidence of intolerable conditions at Holmesburg Prison, including inadequate medical care and facilities, to establish the defense of justification to the escape charge.[6] Appellant asserts that this evidence would have shown that he had been suffering from several medical problems and "that desperation caused by his pain and the lack of proper medical treatment and other conditions . . . caused him to leave the prison." Brief for Appellant at 38. The lower court ruled that evidence of such general prison conditions was inadmissible and limited any such exculpatory evidence to proof of immediate threats to the lives or personal safety of appellant and his co-defendants had they remained in prison. Appellant contends that this ruling deprived him of "a fundamental element of due process of law," *Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967), the right to present a defense.

**6.** All of appellant's co-defendants joined in this effort, and some sought additionally by this evidence to establish the defense of duress. Appellant's offer, however, was based solely on the defense of justification.

"An accused has a fundamental right to present defensive evidence so long as such evidence is relevant and not excluded by an established evidentiary rule." *Commonwealth v. Greene,* 469 Pa. 399, 404, 366 A.2d 234, 237 (1976). *See also Commonwealth v. Boyle,* 470 Pa. 343, 368 A.2d 661 (1977); *Commonwealth v. Bailey,* 450 Pa. 201, 299 A.2d 298 (1973); *Commonwealth v. Collins,* 447 Pa. 300, 290 A.2d 121 (1972). In *Commonwealth v. Clark,* 287 Pa.Super. 13, 429 A.2d 695, also decided on this day, one of appellant's co-defendants contended that the lower court had erred in disallowing the same evidence of adverse prison conditions to establish the defenses of duress and/or justification as appellant had sought to introduce to establish justification only. We held there that "because generally adverse prison conditions do not constitute a defense to a charge of escape and because appellant did not offer to prove an effort or intention to surrender to authorities after his escape, the lower court properly refused appellant's proffered evidence of conditions at Holmesburg Prison." At 695 (footnote omitted). Our analysis of the claim set forth in *Clark* is entirely applicable to appellant's claim, and, accordingly, we will not repeat it here. It is sufficient to say that for the reasons expressed in *Clark,* appellant's proffered evidence was inadmissible to establish the defense of justification, and thus, the lower court's exclusion of that evidence did not deprive appellant of his fundamental right to present a defense in his behalf.[7]

7. Appellant correctly points out that the defense of justification is available to an accused if "a legislative purpose to exclude the justification claimed does not otherwise plainly appear." 18 Pa.C.S.A. § 503(a)(3). Since the legislature has not plainly excluded intolerable prison conditions as a justification to a charge of escape, appellant argues, the lower court lacked the power to exclude his proffered evidence to establish the defense. This argument, however, ignores the fact that the legislature has limited the defense to "[c]onduct which the actor believes to be necessary to avoid a harm or evil to himself ... [which] is greater than that sought to be prevented by the law defining the offense charged." *Id.* at § 503(a)(1). As was true with the defendant in *Clark,* appellant's conduct after the escape strongly suggests that his motivation was to avoid official detention indefinitely rather than simply to avoid a harm or evil to himself caused by conditions at Holmesburg Prison.

■ Appellant contends next that the lower court erred in refusing his requested jury instructions on the effect of prior inconsistent statements on the credibility of witnesses. At trial all three robbery victims testified that they had been robbed by seven men wearing blue pants resembling those later found near the tire store and identified as prison pants. Cross-examination revealed, however, that in pretrial statements (including statements taken shortly after the incident) the three victims had given varying estimates of the number of perpetrators (ranging from six to nine), and had not always provided descriptions of their assailants' clothing. Appellant argues that these inconsistencies had such a critical bearing on the witnesses' credibility that the failure to give the requested instruction constitutes reversible error. We disagree. It is settled that "the trial court is not required to accept the language of the point submitted by counsel but rather is free to select its own form of expression. The only issue is whether the area is adequately, accurately and clearly presented to the jury for consideration." *Commonwealth v. McComb*, 462 Pa. 504, 509, 341 A.2d 496, 498 (1975). We have reviewed the general instructions of the court and conclude that they were sufficient to alert the jury to consider the effect of inconsistencies in the witnesses' statements on their credibility. Accordingly, we find no error in the court's refusal to give further instructions on the subject.[8]

Accordingly, the lower court properly disallowed appellant's proffered evidence of prison conditions.

8. Appellant's reliance on *Commonwealth v. Kramer*, 474 Pa. 341, 378 A.2d 824 (1977), in this regard is misplaced. The defendant in *Kramer* was charged with striking his infant daughter in the abdomen, which resulted in her death. The only eyewitness to this alleged incident, the child's mother, failed to come forward and report it until seven years after her daughter's death. Additionally, the Supreme Court discovered "at least four inconsistencies between her preliminary hearing testimony and that offered at trial. *Id.*, 474 Pa. at 348, 378 A.2d at 827. Despite these facts, the lower court's jury instructions contained nothing on the impeachment of this witness and its effect on her credibility. Under these circumstances the Supreme Court held that the lower had erred in refusing defendant's requested points for charge on the subject of impeachment by

■ Appellant contends finally that he was denied due process of law and equal protection of law by the lower court's use of what he asserts is a less favorable jury instruction on the meaning of the term "reasonable doubt" than that which he requested. Appellant requested the court to instruct the jury that "[a] reasonable doubt is a doubt that would cause a reasonably careful and sensible person to *hesitate* before acting upon a matter of importance in his own affairs" (emphasis added). The court denied this request and instructed the jury that "[t]he law has defined a reasonable doubt as that doubt that will *restrain* a reasonable, careful and sensible person from acting upon a matter of the highest importance in his own affairs" (emphasis added). Our Supreme Court has expressly approved both of these definitions for use in jury instructions. *See Commonwealth v. Young*, 456 Pa. 102, 317 A.2d 258 (1974), and cases cited therein. Appellant contends, however, that the "hesitate" version which he requested allows the jury to acquit on a lesser quantum of doubt than does the "restrain" version which the court employed. Consequently, appellant claims that he was denied due process and equal protection by the fact that the trial judge was free arbitrarily to choose to use the less favorable definition in his instructions. We disagree. That the "hesitate" version is more favorable to defendants than the "restrain" version is by no means certain.[9] Indeed, the fact that our

prior inconsistent statements. In the present case the lower court did instruct the jury generally on the effect of inconsistencies in the witnesses' statements. Moreover, the inconsistencies to which appellant has referred us are not of such magnitude as to require the type of specific instructions deemed necessary in *Kramer*.

9. Appellant asserts that "[t]his Court has recognized that the hesitate version requires less doubt for acquittal," citing *Commonwealth v. Barksdale*, 219 Pa.Super. 444, 281 A.2d 703 (1971). Brief for Appellant at 45, 46. In *Barksdale*, "the court, in its charge to the jury, repeatedly defined 'reasonable doubt' as a doubt which would cause one to '*refrain* from acting' in matters of highest importance in his own life." 219 Pa.Super. at 445, 281 A.2d at 704 (emphasis in original). We noted that "the term 'hesitate' certainly requires less doubt than the term 'refrain.'" *Id.*, 474 Pa. at 446, 378 A.2d at 704. We went on to observe, however, that the Supreme Court had

Supreme Court has approved both versions of the instruction indicates its belief that the difference, if any, is inconsequential. Accordingly, we infer from the Supreme Court's approval of both definitions that appellant's constitutional rights were not infringed by the lower court's freedom to employ the "restrain" version in its jury instructions.

approved the use of the "restrain" version, and held that "[a]s between 'refraining from acting' and being 'restrained from acting' there is no distinction that would support reversal." *Id.* Thus, although we held in *Barksdale* that use of the phrase "refrain from acting" was not a ground for reversal, we neither equated that phrase with the "restrain" version, nor expressed any opinion as to whether the term "hesitate" requires less doubt for acquittal than does the term "restrain." "HESITATE implies a pause or other sign of indecision before acting." Webster's Third New International Dictionary 1061 (1976). "RESTRAIN is a general term suggesting use of force, pressure, or strenuous persuasion to hold back a person or thing from a course of action or to prevent the action itself." *Id.* at 1936. In view of these definitions it is questionable whether a criminal defendant derives any meaningful benefit from a trial judge's use of the "restrain" version in jury instructions.