J-S37008-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MARVIN ALSBROOK | : | |
| | : | |
| Appellant | : | No. 2405 EDA 2022 |

Appeal from the PCRA Order Entered August 28, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002093-2014

BEFORE: BENDER, P.J.E., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY BENDER, P.J.E.: **FILED FEBRUARY 27, 2024**

Appellant, Marvin Alsbrook, appeals *nunc pro tunc* from the August 28, 2020 order denying his petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. Appellant argues that the PCRA court erred in dismissing the petition without a hearing. We affirm.

This Court previously set forth the factual history, as taken from the trial court opinion issued on direct appeal:

> On July 17, 2013, around 10:00 p.m., [the victim, Ronald Brown,] received a call to deliver food to 1139 Union Street. When he arrived at the row house address, he called the caller ID number of the person who ordered the pizza, and the person responded that he would come downstairs. While the victim was waiting on the porch of the property, he saw [Appellant], with his distinct style of walk, and codefendant Tyreek Torrence walking together down the street towards him from the corner. [Appellant] asked, "What's up, homie?" while holding a black .38 revolver gun in his left hand. The victim said, "Damn," and put his keys down, the pizza down, and his hands up by his head "for fear of [his] life." Codefendant stood there [and] then came up on the steps,

grabbed the victim by the collar of his shirt, and the victim "went willingly to the ground" and lay on his stomach. [Appellant] went up on the porch, got the keys, and went straight to the driver's side of the victim's van. Codefendant went through the victim's pockets and sock and took $380.00 United States Currency, his wallet, and his phone. The victim pleaded, "Please don't hurt me. I have two children." Codefendant replied, "Nobody's going to hurt you." Codefendant then got up, got into the passenger side of the van, and [Appellant] drove off toward the Philadelphia Zoo. The victim went around the corner to a friend's house and called the police.

***Commonwealth v. Alsbrook,*** No. 2298 EDA 2015, unpublished memorandum at *1-2 (Pa. Super. July 6, 2016) (bracketing in original). Appellant sought review with our Supreme Court, which denied his petition on December 7, 2016.

Appellant filed a timely, *pro se* PCRA petition on August 24, 2017. Lawrence J. Bozzelli, Esq., was appointed to represent Appellant and filed an amended petition. Meanwhile, Appellant had filed a motion to proceed *pro se*. Motion to Withdraw Counsel, 7/9/18, at 1 (unpaginated). On April 2, 2019, the PCRA court issued a notice of its intent to dismiss the counseled petition pursuant to Pa.R.Crim.P. 907, and Appellant filed a timely response objecting to the notice, citing his outstanding request to proceed *pro se*.

The PCRA court held a ***Grazier***[1] hearing on May 20, 2019, issued an order permitting Appellant to proceed *pro se*, and directed Appellant to file a supplemental petition. Appellant complied, and the Commonwealth filed an answer, with Appellant's lodging a response. The PCRA court issued a Rule

_____

[1] ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998).

907 notice on July 1, 2020, to which Appellant did not file a response. The PCRA court dismissed the petition on August 28, 2020. Appellant did not file an appeal, but his appellate rights were reinstated *nunc pro tunc* pursuant to a subsequent PCRA petition. Appellant, who is now represented by counsel, challenges the denial of his *pro se* PCRA petition. He raises eight points of error:

> 1. Whether the [c]ourt erred when it dismissed the petition without a hearing insofar as numerous disputed issues of fact were at issue in the same?
>
> 2. Whether the [c]ourt erred in dismissing the claim that the evidence was insufficient to prove that [Appellant] was the perpetrator of the crimes beyond a reasonable doubt and the conviction therefore was in violation of Due Process?
>
> 3. Whether the [c]ourt erred in dismissing the claim that trial counsel was ineffective for failing to consult with, and present the testimony of, an expert witness on eyewitness identification evidence?
>
> 4. Whether the [c]ourt erred in dismissing the claim that trial counsel was ineffective for failing to investigate and offer evidence of [Appellant]'s medical condition and his treatment by a nurse for a gunshot which would have made his involvement in the crime unlikely?
>
> 5. Whether the [c]ourt erred in dismissing the claim that trial counsel was ineffective for failing to show that the number used to order the pizza was not registered to [Appellant]?
>
> 6. Whether the [c]ourt erred in dismissing the claim that trial counsel was ineffective in failing to object to witnesses identifying themselves as members of the Narcotics Enforcement Team [(NET)] and in failing to request a cautionary instruction insofar as NET members testified to knowing [Appellant], thereby implying that he was involved in drug activity in the past?

7. Whether the [c]ourt erred in dismissing the claim that counsel was ineffective in failing to object to testimony from Detectives Jara and Antoni which violated the Confrontation Clause.

8. Whether the [c]ourt erred in rejecting [Appellant]'s challenge to appellate counsel's effectiveness insofar as he failed to challenge the admission of hearsay testimony regarding [Appellant's] location when he was arrested which violated the Confrontation Clause?

Appellant's Brief at 8-9.[2]

Our standard of review is well-established:

When reviewing the propriety of an order denying PCRA relief, this Court is limited to a determination of whether the evidence of record supports the PCRA court's conclusions and whether its ruling is free of legal error. *Commonwealth v. Robinson*, 139 A.3d 178, 185 (Pa. 2016). This Court will not disturb the PCRA court's findings unless there is no support for them in the certified record. *Commonwealth v. Lippert*, 85 A.3d 1095, 1100 (Pa. Super. 2014).

*Commonwealth v. Hudson*, 156 A.3d 1194, 1196–97 (Pa. Super. 2017).

The bulk of Appellant's claims sound in ineffective assistance of counsel. The law "presumes counsel has rendered effective assistance." *Commonwealth v. Mullen*, 267 A.3d 507, 512 (Pa. Super. 2021). The PCRA petitioner bears the burden of establishing counsel's ineffectiveness. Pennsylvania law requires the petitioner to prove three prongs: "(1) the underlying claim is of

_____

[2] Appellant's list of issues presented does not correspond to the argument section of his brief. For example, Appellant begins his brief with the heading "I," designated as "The [PCRA] court erred in dismissing [Appellant]'s challenge to trial counsel's effectiveness." Appellant's Brief at 19. He then lists sub issue "A," which argues the expert witness claim designated as issue three in the questions presented. Meanwhile, issue number two, regarding the sufficiency of the evidence to convict, is argued under the separate heading "III," and is the last issue briefed. For ease of discussion, we have addressed the issues as presented in the statement of questions presented.

arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." *Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa. Super. 2019). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). A court need not address the prongs in order, as the failure to establish any prong precludes relief. *Commonwealth. v. Basemore*, 744 A.2d 717, 739 n.23 (Pa. 2000) ("Ordinarily, a claim of ineffectiveness may be denied by a showing that the petitioner's evidence fails to meet a single one of these prongs.").

Appellant's first issue generically challenges the PCRA court's decision to dismiss the petition without holding an evidentiary hearing. A PCRA court may issue a notice of its intent to dismiss a petition without a hearing if the judge, after reviewing the petition, the Commonwealth's answer, and the record, determines that "there are no genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings…." Pa.R.Crim.P. 907(1). We discuss those points where relevant to our analysis.

Appellant's second issue asserts that the evidence was insufficient to convict him of the crimes beyond a reasonable doubt. We agree with the Commonwealth that this claim has been waived. The PCRA's eligibility provision requires that "the allegation of error has not been previously

- 5 -

litigated or waived," 42 Pa.C.S. § 9543(3), and "an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." 42 Pa.C.S. § 9544. A challenge to the sufficiency of the evidence can be raised on direct appeal and the issue is therefore waived. *See Commonwealth v. Rounsley*, 717 A.2d 537, 539 (Pa. Super. 1998) (deeming sufficiency of evidence claim waived for failing to raise issue on direct appeal).

The Commonwealth cited waiver in its answer to Appellant's petition, and additionally noted that direct appeal counsel preserved a sufficiency of the evidence argument in his concise statement but chose not to develop the issue on appeal. Appellant's response countered that the Commonwealth ignored Section 9543(a)(4) of the PCRA, which states that "the failure to litigate the issue prior to or during trial, during unitary review or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel." 42 Pa.C.S. § 9543(a)(4). Appellant maintained that "the Commonwealth does not claim that appellate counsel's decision was rational, strategic, or tactical." Reply to Commonwealth's Answer, 12/26/19, at 3.

Appellant's response ignores the statutory language preceding subsection (4), which states: "To be eligible for relief under this subchapter, the petitioner must plead and prove by a preponderance of the evidence all of the following…." 42 Pa.C.S. § 9543(a). Counsel is presumed effective, and Appellant must establish that the decision was not rational. By ignoring his

burden, Appellant did not properly plead his claim for relief. On this basis alone, the PCRA court did not err in dismissing his petition without a hearing.

Additionally, to the extent that the PCRA court should have charitably interpreted Appellant's statement to mean that he intended to call his direct appeal attorney at an evidentiary hearing to discuss his reasons for abandoning the claim, we note that Appellant does not request a remand for that purpose, electing instead to litigate the underlying merits of the sufficiency of the evidence claim. *See* Appellant's Brief at 46-52. However, he does not establish that prejudice resulted from his counsel's abandonment of the sufficiency claim. Specifically, Appellant asserts that "appellate counsel's failure [to raise the sufficiency issue] was the functional equivalent of a denial of appellate review. Under these circumstances, prejudice is presumed…." *Id.* at 44. We disagree. When appellate counsel's acts cause an actual denial of appellate review (such as by failing to file a requested notice of appeal) or its functional equivalent (such as by failing to file an appellate brief), the presumption of prejudice results in a specific remedy: reinstatement of the right to file a direct appeal. *See Commonwealth v. Ciotto*, 555 A.2d 930, 931 (Pa. Super. 1989) ("When a defendant establishes that counsel's ineffective assistance denied him entirely his right to a direct appeal, he is entitled to a direct appeal *nunc pro tunc* without regard to his ability to establish the merit of the issues which he seeks to raise on direct appeal."). If Appellant maintains that he was presumptively prejudiced, the proper recourse was to request reinstatement of his direct appeal rights.

Additionally, counsel's asserted failures did not deny Appellant appellate review. Counsel's decision to focus on the sentencing issue may have reflected a professional judgment that the sufficiency of the evidence claim was so weak that its inclusion detracted from a potentially meritorious sentencing claim. As our Supreme Court has noted, "[c]laims involving appellate counsel ineffectiveness … involve concerns unique to appellate practice. Arguably meritorious claims may be omitted in favor of pursuing claims which, in the exercise of appellate counsel's objectively reasonable professional judgment, offer a greater prospect of securing relief." *Commonwealth v. Lambert*, 797 A.2d 232, 244 (Pa. 2001). The following discussion explains why prejudice is not presumed when counsel chooses to litigate some issues to the exclusion of others:

> We expressly distinguish herein cases like the present where direct appeal counsel's ineffectiveness waived all the issues that the post-conviction petitioner wished to raise from those cases where direct appeal counsel simply did not raise every issue requested by the criminal defendant. Clearly, in both situations, the criminal defendant has a right to effective representation. However, in the later situation, counsel's conduct may, in fact, have been effective, despite not raising every issue which the defendant believes is meritorious.
>
> Thus, a PCRA petitioner is entitled to an appeal *nunc pro tunc* where prior counsel's actions, in effect, entirely denied his right to a direct appeal, as opposed to a PCRA petitioner whose prior counsel's ineffectiveness may have waived one or more, but not all, issues on direct appeal. In the latter situation, the PCRA petitioner's right to a direct appeal was not entirely denied by counsel's ineffectiveness, and, therefore, he must establish that counsel's ineffectiveness so undermined the truth-determining process so as to render unreliable the adjudication of guilt or innocence. 42 Pa.C.S.[] § 9543(a)(2)(ii).

*Commonwealth v. Hernandez,* 755 A.2d 1, 9 n.4 (Pa. Super. 2000), *aff'd in part*, 817 A.2d 479 (Pa. 2003) (citations omitted). Counsel's decision did not completely deny Appellant appellate review and therefore Appellant's claim of presumptive prejudice is mistaken.

Alternatively, Appellant could not establish prejudice even if he had presented a proper ineffectiveness claim. Counsel would be ineffective if the sufficiency claim were so strong that relief was likely; the prejudice inquiry under these circumstances asks whether the abandoned claim was so much stronger that no rational attorney would decline to pursue it. Obviously, a winning sufficiency claim would result in complete discharge and counsel would have no valid strategic reason for abandoning it in favor of a claim focusing on sentencing. In other words, this is not a case where counsel chose to pursue a suppression issue in lieu of another evidentiary error that would also result in a new trial. We thus examine the merits of Appellant's sufficiency claim as if presented on direct appeal to determine if counsel was ineffective. *Cf. Commonwealth v. Halley*, 870 A.2d 795, 800 (Pa. 2005) (claim of appellate counsel ineffectiveness; "Under the circumstances, although [the a]ppellant's position before the common pleas court was wanting in terms of the development which has later occurred on appellate review, we find that it was within the Superior Court's prerogative to treat the issue as preserved.").

Appellant does not challenge any specific elements of the crimes, only Ronald Brown's identification of Appellant. Appellant's Brief at 47 ("As explained below, the evidence in the case was insufficient to allow the jury to

conclude that [Appellant] was the perpetrator of the robberies at issue."). Appellant describes Brown's testimony as "unreliable and inconsistent" on this topic, because it "was too dark and Brown's opportunity to observe his assailants was too inhibited" for an accurate identification. *Id.* at 48. Additionally, while Brown claimed that he recognized Appellant from the neighborhood and positively identified him as one of the men who robbed him, Appellant argues that his testimony is weakened because "he never mentioned [this] to the 911 operator or to the first responders." *Id.* Appellant's brief also discusses concepts germane to expert testimony concerning eyewitness identification, such as the concept that a witness's ability to make an accurate identification decreases when a weapon is present, and also where the subject's attention is divided between multiple people, as was the case here since two men accosted the victim. Appellant also asserts that even if he "did observe [Appellant] in the past, there is a reasonable probability that this is a case of 'unconscious transference,'" a phenomenon whereby someone selects a person from a lineup based on past familiarity. *Id.* at 49.

We are not persuaded by these arguments. Appellant fails to grapple with the fact that issues concerning the adequacy of a witness' identification go to weight, not sufficiency. In *Commonwealth v. Boone*, 429 A.2d 689 (Pa. Super. 1981), a group of men robbed three victims. Only one of the three victims positively identified Boone as the culprit and, on cross-examination, the victim "conceded that his identification was somewhat 'fuzzy'" and further stated that Boone 'looked like' one of the men who robbed

- 10 -

him. **Id.** at 691. We concluded that the evidence concerning identification was sufficient, as "any uncertainty in [the victim's] identification of [Boone] was a matter for the jury in passing on weight and credibility, and did not render the evidence insufficient to convict." **Id.** Similarly, any issues concerning the reliability of the victim's identification in this case are not sufficiency issues.

Appellant's third and fourth issues involve the failure to call a witness. The third issue relates to counsel's failure to present an expert witness on the subject of eyewitness identifications, while the fourth challenges counsel's failure to call a nurse who treated Appellant, which was relevant to his ability to hold a firearm.

Beginning with the expert witness claim, Appellant argues that trial counsel should have presented an expert on the subject of eyewitness identification. In **Commonwealth v. Walker**, 92 A.3d 766 (Pa. 2014), our Supreme Court overruled law holding that such evidence was *per se* barred. Appellant reasons that because this case rested on the victim's identification, there was a need to present expert testimony and counsel was ineffective for not pursuing that strategy.

We conclude that the PCRA court did not err in dismissing this claim. Our Supreme Court has explained the arguable merit prong as applied to this claim requires proof "that an expert witness was willing and available to testify on the subject of the testimony at trial, counsel knew or should have known about the witness and the defendant was prejudiced by the absence of the

testimony." ***Commonwealth v. Williams***, 141 A.3d 440, 460 (Pa. 2016). Appellant failed to specify an expert witness who would have been willing to testify and explain how that testimony would be helpful. While this holding is sufficient to resolve this issue, we add that Appellant's argument assumes it is self-evident that the failure to call an expert prejudiced him following ***Walker***. We disagree. Appellant appears to interpret ***Walker*** as announcing a *per se* rule that expert testimony on this topic is always admissible, but the Court held that the trial court must exercise its discretion:

> The absolute prohibition of such expert testimony simply proves too extreme an approach in determining whether relevant testimony should be admitted in this area. A more flexible framework strikes a crucial balance in determining the admission of expert testimony, as well as between protecting a defendant's rights while enabling the Commonwealth to meet its responsibility of protection of the public. … We now allow for the possibility that such expert testimony on the limited issue of eyewitness identification as raised in this appeal may be admissible, at the discretion of the trial court, and assuming the expert is qualified, the proffered testimony relevant, and will assist the trier of fact. Of course, the question of the admission of expert testimony turns not only on the state of the science proffered and its relevance in a particular case, but on whether the testimony will assist the jury. Trial courts will exercise their traditional role in using their discretion to weigh the admissibility of such expert testimony on a case-by-case basis. It will be up to the trial court to determine when such expert testimony is appropriate. If the trial court finds that the testimony satisfies ***Frye [v. United States***, 293 F. 1013 (D.C. Cir. 1923),] the inquiry does not end. The admission must be properly tailored to whether the testimony will focus on particular characteristics of the identification at issue and explain how those characteristics call into question the reliability of the identification. We find the defendant must make an on-the-record detailed proffer to the court, including an explanation of precisely how the expert's testimony is relevant to the eyewitness identifications under consideration and how it will assist the jury in its evaluation. The proof should establish the presence of

- 12 -

factors (*e.g.*, stress or differences in race, as between the eyewitness and the defendant) which may be shown to impair the accuracy of eyewitness identification in aspects which are (or to a degree which is) beyond the common understanding of laypersons.

*Walker, supra* at 791–92.

While these observations address whether a trial court should permit an expert to testify, the Court's analysis illustrates the importance of calling a witness at a PCRA hearing. If a defendant at trial must clear these hurdles, the PCRA petitioner must do so as well, and in fact bears the additional burden of showing how the absence of the testimony prejudiced him. That necessarily entails an examination of the testimony as presented at a hearing. In *Commonwealth v. Robinson*, 278 A.3d 336 (Pa. Super. 2022), wherein this Court granted a new trial due to counsel's failure to call an expert witness under *Walker*, we concluded that the petitioner had established arguable merit by locating a witness who "described a scientific model for how humans create memory … [and] surveyed the five factors listed in *Walker*, explaining how they might have affected Officer Fitzgibbon's identification of Robinson." *Id.* at 343. The expert went "[b]eyond the five *Walker* factors[,] … also describ[ing] other variables that can affect identification." *Id.* at 344. We then concluded that Robinson was prejudiced by the failure to present that testimony.

Appellant declined to proffer similar testimony, even when alerted to the defect by the Commonwealth's answer. He therefore failed to establish that

this claim has arguable merit, and the PCRA court did not err in dismissing this claim without a hearing.

Turning to the other witness, Appellant alleges that trial counsel was ineffective for failing to call a nurse to testify to Appellant's injuries. By way of background, Appellant testified at trial that he had been treated for a gunshot wound to the neck close to his spine on May 8, 2013. Appellant then introduced the medical records from his hospital stay for that wound, which included discharge instructions. Appellant testified that he "couldn't move [his] left side" of his arm and that he "had a quality care nurse" who came to his house to assist him with cleaning the wound. N.T., 4/10/15, at 104. This evidence was relevant because Brown testified that Appellant was holding the firearm in his left hand.

Appellant faults trial counsel for failing to call the nurse to corroborate his testimony that he could not have held a gun in his left hand. In fact, he did not name the witness. As with the expert witness claim, Appellant's failure to identify the witness is fatal to his claim. *Commonwealth v. Selenski*, 228 A.3d 8, 17 (Pa. Super. 2020) (concluding that PCRA court properly denied failure to call witness claim where the witness "did not testify at [the a]ppellant's PCRA evidentiary hearing, [the a]ppellant did not offer an affidavit from Mr. Weakley indicating he would have been willing to testify for the defense, and [the a]ppellant has pointed to no other evidence establishing that Mr. Weakley would have been willing to testify for the defense"). Again,

the PCRA court did not err in denying this claim without holding an evidentiary hearing.[3]

Appellant's next issue alleges that trial counsel ineffectively failed to identify the owner of the phone number used to call the pizza delivery. Recall that the testimony from the victim established that, when he arrived to deliver the food, he called the phone number supplied. The recipient said he would come downstairs. Shortly thereafter, Appellant and his co-defendant approached the victim. Appellant maintains that counsel ineffectively failed to determine who owned the phone number in question.

This claim of PCRA court error is meritless. Appellant cannot establish prejudice, as we agree with the Commonwealth that "[Appellant] was not linked to the crime through the telephone number...." Commonwealth's Brief at 28 (emphasis omitted). Even if we assume that Appellant could definitively establish that he did not own the phone number, the jury could still have concluded that Appellant's co-defendant or some other unnamed participant called the phone. Alternatively, the jury could conclude that Appellant and his co-defendant decided to rob Brown on a purely opportunistic basis, *i.e.*, the

---

[3] Even if Appellant proffered a witness who could have testified at a PCRA hearing, it is doubtful that Appellant could establish prejudice. As the PCRA court noted, the medical records introduced at trial indicated that Appellant could return to normal activities on May 8, 2013. PCRA Court Opinion, 11/9/22, at 14. The robbery occurred July 17, 2013. Appellant does not state how long he received care from the nurse and, if he stopped treatment as of May 8, 2013, the nurse's testimony would not be particularly relevant as to events occurring two months later.

pizza delivery was legitimate. We point out that "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." **Strickland**, **supra** at 693 (citation omitted).

Appellant's next claim involves the fact that the Commonwealth called several police officers who, generically speaking, testified that they knew Appellant from their police duties and attempted to locate Appellant after Brown positively identified him. Several of these officers stated, when asked by the Commonwealth how they are employed, that they were members of their department's narcotics unit. Appellant argues that there was no reason for the Commonwealth to have the officers indicate their specific job duties. He further submits that the jury was left with the impression that Appellant must have been involved in the drug trade.

Counsel cannot be deemed ineffective for failing to object because he did, in fact, object to those references. As briefly acknowledged in Appellant's brief, counsel asked the court to exclude those references. During a discussion before the jury was brought in, the Commonwealth stated, "Your Honor, I don't know if there was a ruling[;] counsel in the back indicated that he did not want the officers to identify themselves as [narcotics] [o]fficers…." N.T., 4/10/15, at 10. The trial judge stated "their jobs are their jobs" and overruled the objection. *Id.* at 11. Appellant did not seek review of that issue

on direct appeal and does not explain how trial counsel can be deemed ineffective when he sought to exclude this evidence.

Appellant's next two claims both involve evidence elicited by the Commonwealth in connection with efforts to apprehend Appellant, and we address them together. Detective Gregory Jara testified that his job duties included attempting to serve arrest warrants. He explained that he and his fellow officers make notes in an "apprehend log" when attempting to serve warrants. The Commonwealth then asked Detective Jara, over Appellant's hearsay objection, to read entries from the log. Detective Jara informed the jury that on September 18, 2013, the log showed that a police officer spoke to Appellant's girlfriend, who in turn provided a cell phone number. He further testified that the log indicated that on October 8, 2013, someone asked the FBI to investigate the phone number, and the FBI reported that the number was "down." *Id.* at 49. Additionally, on October 10, 2013, unspecified members of Appellant's family reported that they had not recently seen Appellant. Turning to Detective Antonini's testimony, he testified that when Appellant was arrested he had been found hiding under a bed. On cross-examination, Detective Antonini stated that he learned that information from other police reports and officers.

Beginning with Detective Jara's testimony, Appellant argues that trial counsel, instead of objecting on hearsay grounds, should have specifically objected that the testimony violated the Confrontation Clause to the United

States Constitution.[4]  We conclude that Appellant was not prejudiced.  The Commonwealth properly introduced evidence establishing that Appellant stopped appearing in the neighborhood once an arrest warrant was issued, and that Appellant failed to appear in court on an unrelated matter, which resulted in a separate bench warrant.  Thus, Detective Jara's statements were cumulative of evidence already properly admitted.  The same analysis applies to Detective Antonini, and the case for no prejudice is even stronger since the witness freely admitted that he had no personal basis for his statement.

Appellant's final issue also involves testimony that Appellant was found hiding under a bed when apprehended.  Sergeant Kimber Zerweck testified that he and four other police officers were on assignment when they received information that Appellant was at a particular house.  The five officers proceeded to that location, and he saw a male run into the property.  Sergeant Zerweck knocked on the door and a woman answered.  She denied that anyone had entered the house and allowed the officers to enter.  Sergeant Zerweck testified that, while he was dealing with another male who was on

_____

[4] The trial court overruled Appellant's hearsay objection on the basis that the log qualified as a business record.  Appellant did not pursue that claim on appeal.  The Commonwealth concedes that the log may not have qualified as a business record since that exception does not apply if the records are generated for use in court.  With respect to Appellant's constitutional argument, the Confrontation Clause does not permit the Commonwealth to introduce "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial[.]" **Crawford v. Washington**, 541 U.S. 36, 52 (2004).  We will assume for purposes of our disposition that there is arguable merit to the Confrontation Clause claim.

- 18 -

site, Officer McCoy[5] went to another room. He stated, "Officer McCoy … had encountered [Appellant] in the room under the bed and he pulled him out." N.T., 4/13/15, at 18. The Commonwealth then asked, "And did you see Officer McCloud [*sic*] pulling [Appellant] from the bed?" He replied, "I didn't see him pulling him out, but he was there at the bed when I saw him." ***Id.*** Appellant moved to strike the testimony, and the trial court overruled the objection, stating, "Well, for what it's worth, he didn't see it, so overruled." ***Id.***

Appellant alleges that appellate counsel was ineffective for failing to pursue this issue on appeal, once again contending that "appellate counsel's failure in this regard was the functional equivalent of a denial of appellate review." Appellant's Brief at 44. For this claim, Appellant recognizes that the applicable remedy would be reinstatement of appellate rights, as he does not argue that this preserved allegation of error would have resulted in a new trial on appeal. As set forth *supra*, Appellant was not denied appellate review. He has therefore failed to plead and prove his entitlement to PCRA relief.

Alternatively, we conclude that Appellant could not establish that he was prejudiced by appellate counsel's failure to pursue the claim on direct review. Appellant would need to establish the merits of this claim for appellate counsel to be ineffective, and he has failed to show how the witness' comment could possibly warrant a new trial. ***See Commonwealth v. Ragan***, 645 A.2d 811, 827 (Pa. 1994) (noting that the test for "remarks made during the

---

[5] The officer's first name was not given.

examination of witnesses" is "whether the unavoidable effect of the contested comments was to prejudice the jury, forming in their minds fixed bias and hostility towards the accused so as to hinder an objective weighing of the evidence and impede the rendering of a true verdict") (citation omitted). Even if the jury considered the hearsay for the truth of the matter asserted, whether Appellant was in fact under the bed is, in our view, an incredibly minor point since Sergeant Zerweck testified that he saw Appellant in the bedroom. The probative value of the evidence rests in the fact that Appellant absented himself from court proceedings, was not seen in the neighborhood following the robbery, and hid from officers who knocked on the door seeking Appellant. Whatever prejudice resulted to Appellant from the additional, untested information that Appellant was under the bed is so minor that we cannot conclude there is a reasonable probability that the outcome would have been different if Sergeant Zerweck had refrained from making that comment. Accordingly, Appellant would not have been entitled to PCRA relief even if this claim had been properly pled.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/27/2024