556 A.2d 25

T.C. Inman, Inc., a Pennsylvania Corporation and Theodore C. Inman, an individual, Petitioners *v.* Commonwealth of Pennsylvania, Department of Environmental Resources, Respondent.

Argued February 10, 1989, before Judges BARRY and SMITH, and Senior Judge NARICK, sitting as a panel of three.

*Robert J. Fall, Wymard, Dunn, Gordon & Fall,* for petitioners.

*Diana J. Stares,* Assistant Counsel, with her, *Gail A. Myers,* Assistant Counsel, for respondent.

OPINION BY SENIOR JUDGE NARICK, March 21, 1989:

T.C. Inman, Inc. and Theodore C. Inman (Petitioners) appeal from an order of the Environmental Hearing Board (Board) dismissing Petitioners' appeal from the Department of Environmental Resources' (Department's) order which denied Petitioners' September 12, 1985 application for a solid waste permit. Petitioners also appeal the Department's issuance of a closure order and civil penalty assessment.

From 1955 to 1985, Petitioners operated a sanitary landfill in Beaver County. In 1970, Petitioners submitted an application to the Department for a disposal permit. This application was never fully completed and therefore, was not approved. In 1972, the Department commenced legal action to compel Petitioners to obtain the required permits. Petitioners agreed to submit proper applications for both a Clean Streams Law, Act of June 22, 1937, P.L.

1987, *as amended*, 35 P.S. §§691.1-691.901 permit to operate a leachate treatment facility at the landfill, and a Solid Waste Management Act (SWMA), Act of July 31, 1968, P.L. 788, *as amended*, 35 P.S. §§6001-6017 permit to conduct waste disposal activities at the landfill. The Department issued the Clean Streams Law permit to Petitioners, but did not issue the SWMA permit because Petitioners had not fully completed the application which requires the construction of a leachate collection and treatment system. To enable Petitioners to continue operating for a limited time, the Department issued a letter (letter) on September 4, 1973, granting limited authorization to continue waste disposal, pending final review of the application. The letter also required Petitioners to comply with all applicable laws. No permit was ever issued for the 1972 application.

On September 16, 1982, Petitioners submitted a third permit application. This application was also incomplete. The Department repeatedly advised Petitioners that the permit would be denied if they did not supply the necessary information. Numerous communications between the parties took place over the next few years. On December 7, 1984, the Department returned the inadequate application to Petitioners. The Department later reaccepted the incomplete application; however, it advised Petitioners that if all necessary requirements and amendments were not received by March 26, 1985, the permit would be denied.

On September 12, 1985, the permit was denied, Petitioners still having not produced a completed application. Since Petitioners no longer had a pending disposal application, the Department was statutorily required to order Petitioners to cease operations pursuant to Sections 201 and 501 of the SWMA, 35 P.S. §§6018.201 and 6018.501. This closure order became effective December

31, 1985. A civil penalty was also assessed for failing to comply with regulations in the operation of the landfill. It is from the 1985 permit denial, closure order and civil penalty assessment that Petitioners appeal.

Our scope of review is limited to a determination of whether constitutional rights have been violated, whether an error of law has been committed and whether factual findings necessary to support the adjudication are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704; *Estate of McGovern v. State Employees' Retirement Board*, 512 Pa. 377, 517 A.2d 523 (1986).

Petitioners argue that the Department is estopped from denying its 1982 permit application because the Department's 1973 letter to Petitioners is tantamount to a permit. They argue that they fulfilled all the requirements for an existing permit holder in 1973 and that a mere ministerial omission explains why the Department did not then issue a permit. No evidence was presented to support this argument. Petitioners also argue that the Department's 1985 denial of the SWMA permit was discriminatory. Petitioners have the burden of proving they were entitled to the permit and that the Department abused its discretion in denying the permit application. 25 Pa. Code §21.101(c)(1).

Petitioners' witness, Robert W. Stevens, confirmed that the application did not comport with the regulations. Mr. Stevens testified that maps submitted to the Department were refused as inadequate and that Petitioners did not submit a proper natural gas plan. There was also testimony that the material Petitioners proposed for a liner had not been tested for its resistance to leachate, which also caused the application to be deficient.

Petitioners argue that the Department discriminatorily applied its regulations by requiring Petitioners to

comply with the liner permeability requirement since the regulation only applies to industrial or hazardous waste disposal permits and therefore, it was denied equal protection of the laws.

The Department presented testimony that although its written policy guidelines do not mandate permeability analysis for municipal disposal facilities, this policy was uniformly applied to all municipal disposal applications.[1]

Petitioners failed to prove that similarly situated parties have been given dissimilar treatment under the law in order to succeed in its equal protection argument. *Insurance Adjustment Bureau v. Insurance Commissioner for the Commonwealth of Pennsylvania*, 108 Pa. Commonwealth Ct. 418, 530 A.2d 132 (1987), *rev'd on other grounds*, 518 Pa. 210, 542 A.2d 1317 (1988). Since the Department merely required Petitioner to comply with the same requirements as all other municipal waste applicants, the Department's actions are not discriminatory.

Petitioners contend that a mere ministerial omission caused the Department to fail in granting them a permit in 1973. Had the permit been granted in 1973, Petitioners would have benefitted from the "grandfather effect" of the laws applicable in 1973, in their 1982 application.

---

[1] Petitioners also contend the Department discriminated against them by applying the Department policy of requiring permit applicants to excavate one test pit per acre as a means of complying with Section 75.24(b)(4)(1) of the Rules and Regulations, 25 Pa. Code §75.24(b)(4)(1). This regulation requires an applicant to demonstrate that soil conditions across the site are uniform. While the Department presented evidence to demonstrate that its application of this policy was not discriminatory, it is unnecessary for this Court to even reach this issue. The deficiency of Petitioners' permit application was not based upon their failure to comply with this regulation. Therefore, as the EHB noted, at page 13, n.4 of the Adjudication, in response to this same argument, resolution of the test pit issue does not have any bearing on the ultimate determination in this case.

In 1977, Chapter 75 of the Rules and Regulations, 25 Pa. Code §§75.1-75.450 was amended setting forth additional and more detailed requirements for landfills. Existing landfills were only required to upgrade their operations, rather than meet the more stringent requirements imposed by the amendment upon permit applicants. Petitioners feel it is inequitable for them as existing landfill operators to comply with requirements for new permittees under the amendments of Chapter 75.

Even if the letter was considered a permit, it would now be ineffective by operation of recent regulations. Current 25 Pa. Code §271.112 provides that *no party may operate a municipal waste landfill* after October 11, 1988, *unless that party has submitted an application* for a permit modification *which satisfies the new requirements.*[2]

Given the admitted incompleteness of the permit, the Department was precluded from issuing the permit. *Harman Coal Co. v. Commonwealth, Department of Environmental Resources,* 34 Pa. Commonwealth Ct. 610, 384 A.2d 289 (1978).

Since we find Petitioners' 1982 application was properly denied, we must agree with the Board, that it was incumbent upon the Department to order Petitioners to cease operation of the landfill. Sections 201 and 501 of the SWMA prohibit the operation of a landfill without a

---

[2] 25 Pa. Code §271.112 states that:

By October 11, 1988, no person or municipality that possesses a municipal waste landfill or demolition waste landfill permit under the act of a permit for an impoundment for municipal waste disposal under The Clean Streams Law (35 P.S. §§691.1-691.1001) which was issued prior to April 9, 1988, may dispose or process waste under the permit, unless a preliminary application for permit modification or a closure plan is filed under §271.111 (relating to permit application filing deadline).

permit. The Department acted reasonably by not order-
ing immediate closure. The Department allowed Peti-
tioners a 3 1/2 month period before closure, which af-
forded Petitioners an opportunity to prepare and submit
a new application if they were seriously interested in
complying with the requirements of the law.

Petitioners argue that the Department's closure order
was unreasonable because it failed to balance the region-
wide benefits which would result from operation of the
urgently needed landfill against the environmental harm
it threatens, relying upon *Pennsylvania Environmental
Management Services v. Commonwealth, Department of
Environmental Resources*, 94 Pa. Commonwealth Ct.
182, 503 A.2d 477 (1986) (PEMS). This argument is the
third prong of a three-prong test enunciated in *PEMS*.[3]
The first two prongs require compliance with the statutes
and regulations relevant to the protection of the Com-
monwealth's natural resources and secondly, that the
record reveal an effort to reduce the environment incur-
sion. Before reaching the balancing test of the third
prong, the burden was on the Petitioners to introduce
evidence which would satisfy the first two prerequisites.
This we find it failed to do. If the Petitioners' interpreta-

---

[3] The three prong test set forth in *Payne v. Kassab*, 11 Pa.
Commonwealth Ct. 14, 312 A.2d 86 (1973), *aff'd*, 468 Pa. 226, 361
A.2d 263 (1976), the Commonwealth Court stated:

The court's role must be to test the decision under
review by a threefold standard: (1) Was there compliance
with all applicable statutes and regulations relevant to the
protection of the Commonwealth's public natural resources?
(2) Does the record demonstrate a reasonable effort to
reduce the environmental incursion to a minimum? (3) Does
the environmental harm which will result from the chal-
lenged decision or action so clearly outweigh the benefits to
be derived therefrom that to proceed further would be an
abuse of discretion?

*Payne*, 11 Pa. Commonwealth Ct. at 29-30, 312 A.2d at 94.

tion of *Payne* and *PEMS* was adopted, an applicant could disregard the statutory and regulatory requirements by simply arguing that the benefits of remaining open outweigh the harm to the environment.

The regulations, at former 25 Pa. Code §75.25(o) and current 25 Pa. Code §273.234, mandate prompt closure of a landfill after it has ceased operation in order to eliminate real or potential hazards to the public. Petitioners believe the imposition of the bond upon closure was also improper. The concept of requiring a waste disposer to post a bond as financial guarantee that it will fulfill its closure obligations is fundamental to the entire waste management regulatory program. The bond ensures that adequate funds are available to perform the necessary closure work. This requirement is set forth in both Section 505 of the SWMA, 35 P.S. §6018.505 and the regulations promulgated thereunder, at 25 Pa. Code §271-.301. Therefore, the closure order was not improper.

The Board's assessment of a $500 civil penalty upon Petitioner for violating a single regulatory provision is proper regardless of whether or not the violation was willful or merely negligent according to Section 605 of SWMA, 35 P.S. §6018.605. Petitioners admitted to at least one violation; therefore, the penalty was properly imposed.

Accordingly, we affirm the order of the Board which sustained the Department's denial of Petitioners' 1982 permit application, closure order and civil penalty assessment.

## ORDER

AND NOW, this 21st day of March, 1989, the order of the Environmental Hearing Board is hereby affirmed.