608 A.2d 1112

**T. C. INMAN, INC., a Pennsylvania Corporation and Theodore C. Inman, an individual, Petitioners,**

**v.**

**DEPARTMENT OF ENVIRONMENTAL RESOURCES, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 6, 1992.

Decided May 4, 1992.

Robert J. Fall, for petitioners.

Gail A. Myers, Asst. Counsel, for respondent.

Before PELLEGRINI and FRIEDMAN, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

T.C. Inman, Inc. and Theodore C. Inman (Inman) appeal from an order of the Environmental Hearing Board (EHB) affirming the Department of Environmental Resources' (DER) imposition of a $97,500.00 closure bond upon Inman. We affirm.

From 1955 to 1985, Inman operated a sanitary landfill on three adjoining tracts of land in Beaver County, respective-

ly areas I, II and III.[1] Prior to 1980, Inman filed two separate applications to the DER for a permit to conduct waste disposal activities at the landfill, as required by the Act of July 31, 1968, P.L. 788, *as amended, formerly* 35 P.S. §§ 6001–6007.[2] DER rejected both applications because Inman had failed to provide all the necessary information required for DER's consideration of the application. However, Inman continued to operate the landfill without a permit.[3]

On September 16, 1982, Inman submitted a third permit application for areas I and II. Area III was not included in the 1982 permit application. Again, DER denied the permit as inadequate, ordering Inman to cease operations effective December 31, 1985, and assessing a civil penalty. On appeal, the EHB affirmed as did this Court in *T.C. Inman v. Department of Environmental Resources*, 124 Pa.Commonwealth Ct. 332, 556 A.2d 25 (1989) (*Inman I*).

DER imposed a closure bond of $97,500.00, calculated according to a formula[4] which multiplied the number of acres where solid waste had been placed at the landfill by $5,000.00, and then adding the fixed amount of $7,500.00.[5]

1. Inman contends that it ceased operating a sanitary landfill on area III in 1976.

2. Repealed by the Solid Waste Management Act (SWMA), Act of July 7, 1980, P.L. 380, *as amended,* 35 P.S. §§ 6018.101–6018.1003.

3. On September 4, 1973, DER wrote Inman granting limited authorization to continue waste disposal, therefore, allowing Inman additional time in which to submit an adequate permit application.

4. 25 Pa.Code § 271.331 and DER's exhibit 1 to the EHB hearing.

5.

| Area I | 4.12 acres |
|--------|-----------|
| Area II | 3.88 acres |
| Area III | 10.00 acres |
| TOTAL | 18.00 acres |

$18 \times \$5,000.00 = \$90,000.00$
$+ 7,500.00$
$\$97,500.00$

This calculation was amended twice before reaching the total bond amount of $97,500.00.

Inman appealed the imposition of the closure bond to the EHB, arguing that no bond could be imposed upon an "unpermitted landfill." However, the EHB concluded that Inman had waived its right to argue that the landfill, having never been permitted, was not subject to a closure bond because *Inman I* held that a closure bond was proper. The EHB also concluded that DER met its burden of proving the propriety of its calculation of the closure bond.

On appeal,[6] Inman argues that the EHB erred in concluding that it waived its argument that DER has no authority to require a closure bond on an "unpermitted landfill." In the alternative, Inman argues that the EHB's finding concerning the amount of the closure bond is not based upon substantial evidence.

Inman asserts that the EHB's reliance upon *Inman I*'s holding that a closure bond is proper, does not support EHB's conclusion that Inman waived the argument that DER has no authority to impose a closure bond on an "unpermitted landfill." Inman specifically challenges the imposition of a closure bond on area III which was never a part of the 1982 permit application and which poses no threat to the environment. Inman asserts that *Inman I* concerned only DER's denial of the 1982 permit application for areas I and II, and therefore, neither the EHB nor this Court had before it in *Inman I* the issue of the 10 acres in area III. We do not agree.

In *Inman I*, the central issue was whether DER's letter dated September 4, 1973, granting limited authorization to continue waste disposal, was tantamount to a permit. Inman asserted that the letter was tantamount to a permit. If the 1973 letter was a permit, Inman would have benefitted from the "grandfather effect" of the Act of July 31, 1968's less stringent requirements for permitting in its 1982 permit application. However, we held that the letter was

6. Our scope of review is limited to a determination of whether constitutional rights have been violated, whether an error of law has been committed and whether factual findings necessary to support the adjudication are supported by substantial evidence. 2 Pa.C.S. § 704.

not a permit and therefore, the 1982 permit application had to meet the requirements set forth in the then existing provisions of SWMA. *See Inman I,* 124 Pa.Commonwealth Ct. at 336–337, 556 A.2d at 27–28. While the 1982 permit application listed only areas I and II, area III had been used as a landfill and we held it must be properly closed.

> The concept of requiring a waste disposer to post a bond as financial guarantee that it will fulfill its closure obligations is fundamental to the entire waste management regulatory program. The bond ensures that adequate funds are available to perform the necessary closure work.

*Id.,* 124 Pa.Commonwealth Ct. at 339, 556 A.2d at 28.

Inman asserts here, that neither the language of SWMA nor the regulations promulgated thereunder, allow DER to require a bond upon a landfill that has never been permitted. We do not agree.

While DER's expert, Anthony Orlando, testified that DER does not normally require a closure bond before accepting the permit application, both the former act,[7] and the present provisions of SWMA[8] provide that no permit shall be issued unless and until applicable bonds have been posted with the DER. Furthermore, present 25 Pa.Code § 271.311(a) states that "the department will not approve a new, reissued, renewed or modified permit for processing or disposal of municipal waste, unless the applicant first submits to the department a bond under this subchapter, and the bond is approved by the department." Inman operated its landfill as if it was a permitted site. Therefore, Inman, having operated a landfill for 15 years, cannot circumvent the laws of this Commonwealth concerning proper closure. *Inman I* held that the closure bond is proper, and we reaffirm that holding here.

7. Section 503(b) of the Act of July 31, 1968, *formerly* 35 P.S. § 6018.-503(b), sets forth the former law.

8. Section 501(a) of SWMA, 35 P.S. § 6018.501(a), sets forth the present requirement for a permit application.

Inman also argues that the EHB's finding concerning the amount of the closure bond is not supported by substantial evidence because the bond is unrelated to the remedial actions required to properly close the landfill. Therefore, Inman asserts that DER is entitled only to the $10,000.00 minimum bond required by section 505 of the SWMA, 35 P.S. § 6018.505.[9]

Substantial evidence is such relevant evidence that a reasonable mind would accept as adequate to support a conclusion. *Marcon, Inc. v. Department of Environmental Resources*, 76 Pa.Commonwealth Ct. 56, 462 A.2d 969 (1983). We will examine but not weigh evidence because the agency, i.e., EHB, as fact-finder, is in better position to find facts based upon testimony and demeanor of witnesses and we may not substitute our judgment for that of the agency. *Civil Service Commission v. Poles*, 132 Pa.Commonwealth Ct. 593, 573 A.2d 1169 (1990).

The EHB weighed considerable testimony offered by DER's witnesses, describing Inman's property as well as the testimony of Mr. Inman. Mr. Pastelock, DER's primary witness regarding the acreage calculation, testified concerning his measurements and survey of the acreage upon which waste had been buried and the work he saw needed to be done to adequately close the landfill. Mr. Inman also testified concerning his *estimates* of the acreage upon which waste had been deposited. The EHB held that since Mr. Inman did not introduce any survey results of his own, "his testimony [was] insufficient to rebut to [sic] testimony offered by DER." Inman contends that the EHB erred in not relying on his testimony because Mr. Inman was "the best witness to know how much of those areas actually had waste buried underneath." (Inman brief at 14). Inman is asking us to reweigh the evidence which is not within our limited scope of review.

**9.** Section 505(a) of SWMA states that "all permits shall be bonded for at least $10,000.00."

Inman also argues that no evidence supports a bond in excess of the $10,000.00 statutory minimum bond set forth in Section 505(a) of SWMA. Again, the EHB relied on DER's evidence which established a lack of proper vegetation and the appearance of erosion gullies and excessive slopes at the landfill and further concluded that Inman did not submit any evidence that the $10,000 minimum bond would be sufficient to guarantee that the environmental problems on the landfill would be remedied. Again, our review of the entire record finds that the EHB's findings are supported by substantial evidence.

Accordingly, we affirm.

## ORDER

AND NOW, this 4th day of May, 1992, the order of the Environmental Hearing Board in the above-captioned matter is hereby affirmed.